MITSUI & Co. *et al. v.* UNITED STATES (No. 1699).[1]

1. CONSTRUCTION, PARAGRAPHS 203, TARIFF ACT OF 1909, AND 169, TARIFF ACT OF 1913—"ALL OTHER CABINET WOODS."

In paragraphs 203, tariff act of 1909, and 169, tariff act of 1913, Congress levied duty upon certain and all-sawed forms of specified woods, in which oak is not included, and all " cabinet woods not further manufactured than sawed." Manifestly what are " cabinet woods " besides the ones named is left to common understanding or proof. In view of the well-known and multitudinous uses to which oak is devoted we can not say as a matter of common knowledge that all oak is a cabinet wood.—United States *v.* Mitsui & Co. (4 Ct. Cust. Appls., 449; T. D. 33876).

2. CABINET WOOD—JAPANESE WHITE-OAK LUMBER.

The fact that railroad ties are cut from Japanese white oak is not sufficient to prevent Japanese white-oak lumber from being cabinet wood. The evidence shows that the larger portion of Japanese white-oak lumber introduced into the commerce of this country is used as cabinet wood ; and, upon the evidence in this case, the decision of the Board of United States General Appraisers sustaining the collector's classification of this sawed Japanese white oak as cabinet wood under paragraph 203, tariff act of 1909, or 169, tariff act of 1913, is affirmed.

United States Court of Customs Appeals, December 2, 1916.

APPEAL from Board of United States General Appraisers, Abstract 39231.

[Affirmed.]

*Curie, Smith & Maxwell* (*Thomas M. Lane* and *Albert MacC. Barnes, jr.,* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin* and *Leland N. Wood,* special attorneys, of counsel), for the United States.

[Oral argument October 27, 1916, by Mr. Lane and Mr. Baldwin.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise the subject of our present inquiry consists of three importations of Japanese white-oak lumber. The invoice is missing in one case, but the collector reports it to have been sawed cabinet lumber. The invoice of another importation describes the lumber as quarter-sawed oak and plain oak. The invoice description of the third is plain oak boards. Two of the importations were under the tariff act of 1909 and the other was made under the tariff act of 1913. In each instance the oak was assessed for duty as

---

[1] Reported in T. D. 36870 (31 Treas. Dec., 552).

cabinet wood not further manufactured than sawed, that under the tariff act of 1909 at 15 per cent ad valorem, and that under the tariff act of 1913 at 10 per cent ad valorem. The two paragraphs furnishing the claimed authority for such assessment are as follows:

*Tariff act of 1909.*

203. Sawed boards, planks, deals, and all forms of sawed cedar, lignum-vitæ, lancewood, ebony, box, granadilla, mahogany, rosewood, satinwood, and all other cabinet woods not further manufactured than sawed, fifteen per centum ad valorem; * * *.

*Tariff act of 1913.*

169. Cedar commercially known as Spanish cedar, lignum-vitæ, lancewood, ebony, box, granadilla, mahogany, rosewood, and satinwood; all the foregoing when sawed into boards, planks, deals, or other forms, and not specially provided for in this section, and all cabinet woods not further manufactured than sawed, 10 per centum ad valorem; * * *.

In G. A. 7357 (T. D. 32454) the Board of General Appraisers held Japanese white oak in the log to be cabinet wood, and in G. A. 7682 (T. D. 35131) they held Japanese white oak in the form of sawed lumber to be cabinet wood. In the case of United States *v.* Mitsui & Co. (4 Ct. Cust. Appls., 449; T. D. 33876) we had before us the issue of whether a certain importation consisting of sawed lumber (ash, poplar, and oak, the last named being Japanese oak) was cabinet wood. The Board of General Appraisers held that upon the record there made the evidence failed to show that the importation came within the designation of cabinet wood. In affirming that decision upon the record, and in discussing paragraph 203 of the tariff act of 1909, it was said:

Congress has seen fit to declare that certain and all sawed forms of specified woods, in which oak is not included, and "all other cabinet woods not further manufactured than sawed," shall pay duty at the rate of 15 per cent ad valorem. Manifestly what are "other cabinet woods" is left to common understanding or to proof. In view of the well-known and multitudinous uses to which oak is devoted, we can not say, as a matter of common knowledge, that all oak is a cabinet wood. Upon the evidence above recited we can not say that the board erred in holding that the oak in this case was not a cabinet wood.

It will be observed that the question was there treated as a question of fact upon the proof. In the present case a somewhat extensive record is made up by testimony of witnesses, some of whom have established an arbitrary standard in determining what is and what is not cabinet wood, and the evidence has for this reason furnished a sharp conflict. Some of the witnesses for the importers appear to have reached the conclusion that Japanese oak is not cabinet wood, for the reason that much of it is used for common purposes, much of it even for railroad ties. It is, however, manifest from the evidence

that in all cabinet woods, including as high a grade of wood as mahogany, in the country of production it is not uncommon to use portions of it for railroad ties. It is, nevertheless, cabinet wood, and the same thing could be said of black walnut and other well-recognized cabinet woods. The same thing is true of Japanese oak. It is used in considerable part for railroad ties, but the sawed Japanese oak, which is the subject of importation in these cases, is none of it so used nor is it adapted to such use. The railroad ties made from Japanese oak are made from inferior grades of lumber, and common knowledge would suggest that they are made largely from smaller trees, such as are not cut into lumber for exportation. If we come to deal with the lumber which is the subject of the present importations, the evidence, fairly construed, leads us to the conclusion that the larger portion of lumber of that class introduced into the commerce of this country is used for purposes which are designated by the witnesses as cabinet use; in other words, used as cabinet wood.

The importers undertake to show by a classification of the importations that a great portion of Japanese oak introduced into this country is used for railroad ties. It is possibly true that more than half of all the importations of articles or material made from Japanese oak during the period under discussion in the testimony consisted of railroad ties, but it does not follow that because railroad ties may be cut from the trees from which also the sawed lumber in question is manufactured that the product so manufactured may not be cabinet wood.

We think the question should be as to whether sawed lumber, such as that imported, is cabinet wood, and in reaching a conclusion such material as has been diverted to a special use is not to be counted in determining what the major use or uses of Japanese lumber imported into this country *as such* is.

The board sustained the action of the collector in treating these importations as cabinet wood not further manufactured than sawed, and we think the testimony fully justified the finding of fact which resulted in this conclusion.

*Affirmed.*