MEXICAN HARDWOOD LUMBER CO. *v.* UNITED STATES (No. 1857).[1]

1. CONSTRUCTION, PARAGRAPH 169, TARIFF ACT OF 1913—"CABINET WOOD"—INTERIOR TRIM—EVIDENCE—JUDICIAL KNOWLEDGE.

The term "cabinet wood," paragraph 169, tariff act of 1913, is not limited to woods used in the manufacture of movable furniture. The fact that a wood is

chiefly used for the interior trimming of rooms does not per se exclude it from classification under the paragraph. If considerable mechanical skill and artistic conception are employed and required to produce a highly ornamental and decorative appearance in the interior trim, wood so used may be properly classified as cabinet wood under the paragraph. That highly ornamental and decorative results are often produced in the interior trimmings of rooms and that the skill required to produce such results rises to the dignity of cabinetwork are common knowledge.

2. EVIDENCE, PRESUMPTION IN FAVOR OF COLLECTOR'S CLASSIFICATION

The merchandise having been classified by the collector as cabinet wood, the burden was upon appellant to show that it was not.

3. JUANACOSTA LUMBER—CABINET WOOD.

Juanacosta lumber, shown to be chiefly used for the interior trim of rooms and not for making movable furniture, was classified by the collector as cabinet wood under paragraph 169, tariff act of 1913. The protest claimed free entry under paragraph 647. Protestant failed to show that the interior trim for which the lumber was used was not of the kind and character constituting cabinetwork or that for any other reasons it was not a cabinet wood. The decision of the Board of General Appraisers overruling the protest is affirmed.

## United States Court of Customs Appeals, March 6, 1918.

APPEAL from Board of United States General Appraisers, Abstract 40836.

[Affirmed.]

*Frank L. Lawrence* (*A. M. Barnes* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence* and *Samuel Isenschmid,* special attorneys, of counsel), for the United States.

[Oral argument Feb. 13, 1918, by Mr. Barnes and Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, De VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The question in this case is whether the collector's classification and assessment of sawed juanacosta lumber as cabinet wood under paragraph 169 of the tariff act of 1913 should or should not be sustained.

We quote the paragraph:

169. Cedar commercially known as Spanish cedar, lignum-vitæ, lancewood, ebony, box, granadilla, mahogany, rosewood, and satinwood; all the foregoing when sawed into boards, planks, deals, or other forms, and not specially provided for in this section, and all cabinet woods not further advanced than sawed, 10 per centum ad valorem; veneers of wood, 15 per centum ad valorem.

The Board of General Appraisers affirmed the collector's action.

The importers claim free entry under paragraph 647.

The lumber was exported from Mexico and entered at the port of Los Angeles. Two importations and two protests are in issue. While this lumber is often referred to as "juanacosta mahogany," we think the evidence establishes that it is not mahogany in fact and is not so known in the trade. We do not understand the Government to claim otherwise, and it was classified not as mahogany but as cabinet wood. All the witnesses agree that it is a hard wood. They are in substantial agreement that it is not as hard as true

mahogany. Some testify that it is similar in that characteristic to Spanish cedar, which is dutiable under the paragraph; others liken it to white pine or white cedar. It has been used to some extent in making furniture, but for some reason there seems to be no demand for furniture made therefrom. Some witnesses say that the grain is too flashy or too loud or the wood too soft for furniture purposes and that it does not receive a polish as readily as some harder and finer-grained woods. The importer's witnesses are in substantial agreement that its chief use is in the making of what is termed "interior trim," which includes, they say, moldings, picture moldings, base moldings, baseboards, door and window casings, jams, cornices, chair rails, plate rails, panels or panel work, and door frames, used in finishing the interior of rooms in buildings. The testimony on behalf of the Government was in accord with this, but enlarged somewhat the interior finishing uses of the wood.

We think the evidence fairly establishes that the chief use of juanacosta lumber is for interior trim, which term, adopting the views of the witnesses, includes the interior trimmings and fittings of buildings, but excludes movable furniture. Its grain and texture are such that it will receive a finish which produces attractive and decorative results as to figure and color, and it is desirable and is selected and used for panel and other interior work. There is no evidence that the term "cabinet wood" has any trade meaning.

The importers, in the first instance, plant themselves upon the proposition that use for interior trim is not a cabinet use and claim this question is res adjudicata. We have carefully examined the opinions of the Board of General Appraisers in the cases cited to support this contention, and are unable to agree with the importer's claim in this behalf. Without here analyzing each case, it is sufficient to say that the question for adjudication in all was whether a given wood was or was not a cabinet wood. The statute involved in some of the cases differs from that here under consideration. In one instance, at least, the question of commercial designation was involved. In no case, as we understand, was it squarely held by the board that no interior trim was cabinet work.

It is true that in some of the cases cited, but not all, the board used language which indicated that it then inclined to the view that the use of wood for "trim" or "trimmings" of rooms was not a cabinet use. The opinions, however, do not disclose what character of trimmings the board had in mind nor do they give any indication that the trimmings which were made from the woods then under consideration were as decorative or elaborate as those which may be made from the woods here in question.

In all these cases the remarks of the board relied upon by the importers were only arguments adduced by it in support of its conclu-

sion in the respective cases.    The *question* before it in each case was whether the importation was or was not a cabinet wood and not whether interior trim was or was not a cabinet use and we would be reluctant to give these decisions the force and effect claimed for them by the importers.

Then again, in a decision under the act of 1909, the board held, upon the testimony before it, that juanacosta wood was a cabinet wood.

In view of all this, we think the importer's argument as to the implied legislative adoption of the meaning of the term "interior trim," which, by the way, does not appear to be a statutory term or an assumed resulting customs practice, at least as far as juanacosta wood is concerned, is without the requisite foundation.

We think it is a mistake to assume that the term "cabinet," disregarding its political significance, or "cabinetwork" refers only to movable furniture.    One common meaning as evidenced by dictionaries is a small room or closet used for purposes of consultation or used for receiving and storing articles that are choice or valuable because of their artistic or intrinsic qualities or rarity or some other peculiar or unusual attribute.    These rooms were and are often elaborately designed and ornately fitted, the work and material required to accomplish which may well be within the term "cabinetwork" or "cabinet wood."

That interior trim may in the common acceptation of the term include cabinetwork, we think is indicated by the New Standard Dictionary.    Referring to "cabinet" used in connection with other words, the term "cabinet trim" is there defined as "hardwood used for trimming interiors, as of rooms, polished or varnished like cabinetwork."    "Cabinet finish" is in the same connection defined as "finish, like cabinetwork, applied to hardwood trimming used for panels, frames, etc., in the interior of a house."

In the New International Encyclopædia "cabinetwork" is by extension defined to be the "art of fine woodwork such as was used at one time largely in making delicate decorative furniture for such rooms and collections."

We are unable to adopt the view of the importers that the fact that a wood is chiefly used for interior trim per se excludes it from classification as a cabinet wood under this paragraph.

The wood in this case has been classified as cabinet wood and the burden is therefore upon the importers to establish that it is not such

It was pointed out in United States *v.* Mitsui & Co. (4 Ct. Cust. Appls., 449; T. D. 33876) that whether a wood is or is not classifiable as cabinet wood is a question of fact to be determined upon the record in the particular case and in Mitsui & Co. et al. *v.* United

States (7 Ct. Cust. Appls., 307; T. D. 36870) that some grades and conditions of a given wood may rise to the quality of a cabinet wood while other grades and conditions may not be such.

There is no evidence in this case that this wood is not all of the same grade, other than that furnished by the tallyman's report which divides it into "firsts," "seconds," and "commons," but no point is made of this fact, if it be a fact, by either party.

We are of opinion that wood the chief use of which is for interior trim may properly be regarded as cabinet wood, depending upon the character of the trim which it is used to produce. If considerable mechanical skill and artistic conception are employed and required to produce a desired highly ornamental and decorative appearance in the interior trim, we see no reason why wood chiefly so used may not be properly classified as cabinet wood. That highly ornamental and decorative results are often produced in the interior trimmings of rooms and that the skill required to produce such results rises to the dignity of cabinetwork, we think are common knowledge.

Now, in this case it was the duty of the importers, in order to sustain the protests, the importations having been classified as cabinet wood, to show that this juanacosta lumber was not in fact suitable or was not chiefly used for interior trim of the kind and character constituting cabinetwork or that for other reasons it was not a cabinet wood. This, upon the mistaken assumption that no interior trim is cabinetwork, they have failed to do and therefore have failed to make good their protests.

In this view it becomes unnecessary to pass upon the question of the admissibility of certain evidence the reception of which was objected to by the importers, as, without considering it, our conclusion is the same.

The result is that the judgment of the Board of General Appraisers is *affirmed*.