WHEELER, ELDER & ELDER v. UNITED STATES (No. 2060).[1]

1. EVIDENCE, COLLECTOR'S REPORT.

Where the collector, in his report on the protest, conceded that a portion of the importation was properly classifiable as claimed, the Board of United States General Appraisers should have so held, particularly when the concession was consistent with the other evidence.

2. CONSTRUCTION, PARAGRAPH 169, TARIFF ACT OF 1913—"CABINET WOODS"—JAPANESE WHITE-OAK LUMBER.

Certain kinds of Japanese white-oak lumber are classifiable as "cabinet woods" under paragraph 169, tariff act of 1913. The classification in each case depends upon the chief use of the kinds, grades, and conditions in question. If it should be found in any case that the chief use of the importation in question is a cabinet-wood use, it should be classified as a cabinet wood. Cabinet use includes the manufacture of furniture (particularly when of a substantial or superior character), office desks and fixtures, show cases, music boxes, inlaid or parquet flooring, molding, fine panel work, and high-grade interior trim in general. The term does not, however, apply to plain or common flooring or other like carpentry. The evidence in this case is not sufficient to overcome the decision by the board, in harmony with that by the collector, classifying the Japanese white-oak lumber at bar as a cabinet wood under paragraph 169, rather than sawn lumber not specially provided for, under paragraph 647.

---

[1] T. D. 38752.

United States Court of Customs Appeals, June 2, 1921.

APPEAL from Board of United States General Appraisers, Abstract 43792.

[Modified.]

*Frank L. Lawrence (Thomas M. Lane* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Samuel Isenschmid,* special attorney, of counsel), for the United States.

[Oral argument May 10, 1921, by Mr. Lane and Mr. Isenschmid.]

Before SMITH, BARBER, and MARTIN, Judges; DE VRIES, Judge, participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:

This appeal relates to certain Japanese white oak lumber, sawn and graded, which was imported into this country at the ports of Seattle, San Francisco, and Los Angeles.

The collector classified the lumber as cabinet wood, and assessed it with duty at the rate of 10 per cent ad valorem, under paragraph 169 of the tariff act of 1913.

The importers protested against the assessment, denying that the lumber was cabinet wood, and claiming free entry for it under the enumeration of sawn lumber not specially provided for, in paragraph 647 of the act.

The Board of General Appraisers considered the case upon the evidence and overruled the protest. The importers appeal.

The following is a copy of the provisions in question:

169. Cedar commercially known as Spanish cedar, lignum-vitæ, lancewood, ebony, box, granadilla, mahogany, rosewood, and satin-wood; all the foregoing when sawed into boards, planks, deals, or other forms, and not specially provided for in this section, and all cabinet woods not further manufactured than sawed, 10 per centum ad valorem; veneers of wood, 15 per centum ad valorem.

FREE LIST.

647. Wood: * * * sawed boards, planks, deals, and other lumber, not further manufactured than sawed, planed, tongued and grooved; * * * all the foregoing not specially provided for in this section.

It will be noted that Japanese white oak is not one of the woods which are enumerated eo nomine in paragraph 169, supra, and the sole question in the case is whether the imported lumber falls within the enumeration of cabinet woods, as therein contained. If so, it would be dutiable as assessed; if not, it would be free of duty.

According to a concession made by the importers in their brief the present appeal is limited to the following kinds of lumber covered by the invoice, viz: No. 1 common, both plain and quartered; firsts and seconds, both plain and quartered; car material; and certain oak flooring.

As to the flooring, the collector made the following entry upon his report in answer to the protest, viz: "I concede oak flooring, item 'S-61' is free." We think that this report, which seems to be con-

sistent with the evidence, should be given the effect of setting aside the assessment upon the item in question. As to the car material, we do not find sufficient evidence in the record to differentiate it from the other kinds of lumber above named. This leaves the No. 1 common and the firsts and seconds, whether plain or quarter-sawed, as the only kinds of lumber in controversy.

In T. D. 32454, decided April 26, 1912, the board dealt with certain Japanese white oak hewn logs, which had been imported under the tariff act of 1909. They had been assessed with duty as hewn logs not specially provided for, but the importers protested, claiming that the logs were entitled to free entry under the provision for "all forms of cabinet woods, in the log, rough, or hewn only," in paragraph 713 of the act. The board found that the logs were cabinet wood, and accordingly sustained the protest. In the course of its decision the board said:

> It should not even require proof to establish the fact that oak is very extensively used as a cabinet wood. We see it on every hand, but, of course, all kinds of oak are neither adapted for nor used as cabinet woods. The oak in question, however, is Japanese white oak, and its use for cabinet purposes is shown by the record to be quite general, varying according to the opinions of the witnesses from 50 to 75 per cent. There is, we think, ample warrant for holding that white oak, the most general use of which is for cabinet purposes, is a cabinet wood, even though it be established that it is used to a limited extent for trim and other purposes not strictly cabinet work.—(See Hough's Handbook, p. 165, and Stone's Timbers of Commerce, p. 228.)

On June 12, 1912, in T. D. 32660, the Treasury Department issued a letter of instruction to the Customs Service, referring to the foregoing decision and announcing the Government's acquiescence in the same. Collectors were accordingly instructed that Japanese white oak was entitled to classification as a cabinet wood, and when imported in the log, rough or hewn only, it should be admitted free of duty under paragraph 713 of the act of 1909, and if in the form of sawed boards, planks, deals, and not further manufactured than sawed, to be dutiable at the rate of 15 per cent ad valorem under paragraph 203 thereof.

Afterwards in Abstract 31558 (T. D. 33263) the board had before it certain ash, poplar, and oak lumber which had been assessed with duty as cabinet woods, but the board held upon the evidence that the importations were not cabinet wood, and sustained a protest against the assessment. In its decision the board in part said:

> The mere fact that some part of the lumber was oak, and that certain kinds of oak in particular instances have been held to be cabinet wood, does not in itself justify the assumption that all oak is cabinet wood. From its dimensions and the described uses we are satisfied that no part of the lumber in question was cabinet wood, and that the claim in the protest is therefore well founded

The decision of the board was appealed to this court (United States v. Mitsui & Co., 4 Ct. Cust. Appls., 449, 451; T. D. 33876) and was affirmed. The court said in part:

Manifestly what are "other cabinet woods" is left to common understanding or to proof. In view of the well-known and multitudinous uses to which oak is devoted we can not say as a matter of common knowledge that all oak is a cabinet wood. Upon the evidence above recited we can not say that the board erred in holding that the oak in this case was not a cabinet wood, neither does a consideration of the evidence in the case imported into the record here lead to any different conclusion, for witnesses there testified to what is well known, that oak has manifold uses. It should also be observed that the oak logs in the other case were shown to be of a high grade known as "No. 1 logs," and there is no evidence that the oak lumber in this case has been sawed from such logs or is of the same quality.

Afterwards, in T. D. 35131, the board again had before it certain importations of Japanese white oak lumber, and upon the evidence in the case they were held to be cabinet wood; and again, in Abstract 39231, a similar conclusion was reached upon another importation. The latter case was appealed to this court and the decision was affirmed (Mitsui & Co. *v.* United States, 7 Ct. Cust. Appls., 307, 309; T. D. 36870), the court speaking in part as follows:

If we come to deal with the lumber which is the subject of the present importations, the evidence fairly construed, leads us to the conclusion that the larger portion of lumber of that class introduced into the commerce of this country is used for purposes which are designated by the witnesses as cabinet use; in other words, used as cabinet wood.

\*       \*       \*       .\*       \*       \*       \*

We think the question should be as to whether sawed lumber, such as that imported, is cabinet wood, and in reaching a conclusion such material as has been diverted to a special use is not to be counted in determining what the major use or uses of Japanese lumber imported into this country *as such* is.

Afterwards in Abstract 40836, certain Juanacosta lumber, chiefly used for high-grade interior trim, was held by the board to be cabinet wood upon a similar line of reasoning, and the decision was affirmed by this court in Mexican Hardwood Lumber Co. *v.* United States (8 Ct. Cust. Appls., 300, 303; T. D. 37582). In the latter decision the court in part said:

It was pointed out in United States *v.* Mitsui & Co. (4 Ct. Cust. Appls., 449; T. D. 33876) that whether a wood is or is not classifiable as cabinet wood is a question of fact to be determined upon the record in the particular case and in Mitsui & Co. et al. *v.* United States (7 Ct. Cust. Appls., 307; T. D. 36870) that some grades and conditions of a given wood may rise to the quality of a cabinet wood while other grades and conditions may not be such.

It should be noted at this point that neither party claims that a commercial designation has been proven with reference to the lumber in question; and it is practically agreed by both parties that its classification properly depends upon its chief use as established by the testimony.

The present record presents all of the testimony concerning Japanese white oak lumber, which was taken at three several trials on that subject before the board.

The first trial was reported in T. D. 35131, supra, wherein eight protests relating to various kinds of lumber including the present, were united in the same record, 18 witnesses being examined on behalf of the importers and 22 on behalf of the Government. Upon the testimony thus submitted the board found against the claims of the importers, and this decision in effect is adverse also to their present claims.

The second trial contained in the present record was the Mitsui case, reported in T. D. 39131, supra, wherein 6 witnesses were examined on behalf of the importers and 7 on behalf of the Government. The board held against the importers upon the testimony in the case. The importers appealed to this court—Mitsui & Co. et al. v. United States (7 Ct. Cust. Appls., 307; T. D. 36870), supra—and the decision of the board upon the evidence was fully sustained.

The third trial was had upon the present protest, at which three witnesses were examined on behalf of the importers. The Government called no witnesses at the trial, but relied upon the testimony which had been introduced as aforesaid at the former trials.

It is hardly practicable, nor does it seem necessary for us in this decision, to restate in detail the rules and principles upon which our former decision was based, nor to discuss in detail the testimony of the numerous witnesses who have appeared at the several trials. According to the conclusions heretofore reached it may be accepted as established that certain particular kinds of Japanese white oak logs and lumber are classifiable as cabinet wood, and that the classification in each case depends upon the chief use of the kinds, grades, and conditions in question therein. And that this is a matter of fact which is to be drawn from common knowledge and from the evidence in the given case. If it be found in any case that the chief use of the imported lumber involved therein is a cabinet-wood use, the importation should be classified as cabinet wood. Nor is there any prohibitive difficulty in finding from the testimony, in a general way at least, what are cabinet-wood uses for lumber. It appears that, among other things, these include the manufacture of furniture, particularly when of a substantial or superior character, also of office desks and fixtures, show cases, music boxes, inlaid or parquet flooring, molding, fine panel work, and high-grade interior trim in general. The term, however, does not apply to plain or common flooring or other like carpentry work.

The lumber in controversy in this case is not further manufactured than sawed. It is accordingly not finally appropriated to any particular use but is plainly adaptable to a variety of uses, some of which would be cabinet-wood uses and others not. The issue therefore is whether upon the evidence it appears that in fact its chief use is as cabinet wood. This inquiry, however, does not limit the investi-

gation to these particular importations only, but extends to all importations of Japanese white oak lumber having similar character, forms, grades, and conditions.

The board has held upon the evidence that the chief use of the importations is as cabinet wood, and we are to decide whether that decision is manifestly against the weight of the evidence, or is contrary to law.

As has been observed we do not consider it necessary to discuss the evidence in detail, but we have reexamined the testimony upon which our former decision was based, and we find no reason for departing from the conclusion therein reached. We feel also that the decision receives additional support by the testimony reported in T. D. 35131, although concededly the witnesses are at great variance with one another.

The only remaining question is whether the testimony of the three new witnesses called by the importers at the last trial overcomes the conclusion of the board and the court upon the former testimony. We do not find that it should have that effect.

We think that upon the entire record the board's decision to the effect that the chief use of such importations as these is a cabinet-wood use is sufficiently sustained by the evidence, notwithstanding the fact that much of it is used for flooring. It appears indeed from the testimony that certain of the importations are used either for flooring, inside trim, or for furniture, according to market conditions or the trade necessities of the buyers. Accordingly some observers might be led to believe that such kinds are chiefly used for one purpose while others would find their chief use to be different.

Certain questions of procedure also were saved on the record by the appellants, but these have been partially waived in this court, or at least have been merged in effect in the main issue.

The board's decision is accordingly affirmed except as to the flooring described in the invoice as "S-61," in which particular it is reversed.

*Modified.*