UNITED STATES *v.* DOWNING & CO. (No. 1772).[1]

CONTAINERS.

> Carbonic-acid gas was imported packed under compression in steel tubes or capsules about 2 inches in length and an inch in diameter fitted with air-tight screw caps for use in charging drinking water. It was shown that the gas was purchased as a separate commodity and packed into the capsules for transportation; that the capsules were commonly returned to dealers and sent abroad again in the same service, and that they have no other use. The gas was the *per se* merchandise and the capsules mere containers within the meaning of that word in paragraph R of section 3, tariff act of 1913. Paragraphs K, M, and R of section 3 confine the duty of the appraiser to the merchandise, and his action in advancing the value of the capsules conferred no validity upon the collector's assessment of the additional duty imposed by paragraph I of section 3 in cases where the appraised exceeds the entered value.

United States Court of Customs Appeals, February 28, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7969 (T. D. 36703).

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellees.

[Oral argument Feb. 8, 1917, by Mr. Hanson and Mr. Brown.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise consists of carbonic-acid gas packed under compression in small steel tubes or capsules. The articles are called " carbonettes " in the trade. The steel capsules are oval in shape, are about two inches in length and an inch in diameter, and are fitted with air-tight screw caps. The articles are intended for use in connection with certain so-called " Prana " siphons, for the pur-

---

[1] Reported in T. D. 37052 (32 Treas. Dec., 268).

pose of charging drinking water with carbonic-acid gas. By means of a single carbonette a small vessel of still water may be charged with gas and thus converted into aërated or sparkling table water.

The importers entered the articles upon an invoice which set out the carbonic-acid gas as the actual merchandise of the importation and the steel capsules as simply the usual containers thereof. The importers conceded that both of these were subject to ad valorem duty under the act, and accordingly their respective values were separately stated in the invoice.

In due course the invoice and entry came to the appraiser for his official action. That officer approved the entered value of the carbonic-acid gas, but found the actual market value of the steel capsules to be greater than their invoice or entered value. The appraiser therefore made an official entry "advancing" the entered value of the capsules in a stated sum in order "to make market value." No appeal for reappraisement was taken by either party.

Acting upon this report of the appraiser the collector assessed duty at the appropriate rate upon the entered value of the gas, plus the value of the capsules as thus advanced, and furthermore assessed both with the so-called "additional duty" provided for by paragraph I of section 3 of the tariff act of 1913.

The importers protested against the assessment of this "additional duty." They claimed that in the present case the carbonic-acid gas alone constituted the *per se* merchandise of the importation, and the capsules were simply the usual containers thereof. They claimed that the appraiser was therefore authorized to appraise the value of the gas only, leaving it to the collector to ascertain and fix the cost or value of the containers as expenses incident to placing the merchandise in condition packed ready for shipment to this country. The importers furthermore contended that when in the present instance the collector adopted the "advanced" value of the capsules as found by the appraiser as the dutiable valuation thereof, this action conferred no validity upon the aforesaid extra-official action of the appraiser, for in contemplation of law the action of the appraiser was advisory only, and was simply followed as such by the collector in the performance of his official duty to ascertain and fix the dutiable cost or value of the capsules as containers. The importers therefore claimed that "additional duty," being limited by the terms of the statute to cases wherein the entered value of the merchandise should be lawfully "advanced" by the appraiser, could not be assessed upon the capsules in question since these were not *per se* merchandise and did not come within the jurisdiction of the appraiser for appraisement.

The following is a copy of the vital part of the protest:

SIR: Notice of dissatisfaction is hereby given with, and protest is hereby made against, your ascertainment and liquidation of duties, and your decision assessing duty on the entries below named.

The reasons for objection are as follows:

You have assessed additional duties (so-called penalties) under the alleged authority of paragraph I of section 3 of the tariff act of October 3, 1913. There is no authority of law in said paragraph or elsewhere for said assessment. Said assessment is illegal and void. The appraised value of the merchandise does not exceed the entered value within the meaning of said paragraph I. The so-called addition by the appraiser relates only to the containers of the merchandise. G. A. 4737 (T. D. 22402) ; Abstract 27533 (T. D. 32149). Said containers are not subject to appraisement. United States *v.* Spingarn Bros. (T. D. 34002). The so-called addition by the appraiser should be treated as an advisory notification to you that the appraiser considered the invoiced value of the containers to be too low. You should reliquidate the entry, refunding the additional duties (so-called penalties) which you have assessed.

The protest was submitted to the Board of General Appraisers and was sustained. The Government appeals.

The following provisions of the tariff act of October 3, 1913, are here copied for reference:

Paragraph I of section 3.

\* \* \* And if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry: \* \* \*.

Paragraph K of section 3.

That it shall be the duty of the appraiser \* \* \* to ascertain, estimate, and appraise \* \* \* the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported, and the number of yards, parcels, or quantities, and actual market value or wholesale price of every of them, as the case may require.

Paragraph M of section 3.

\* \* \* The decision of the appraiser, or the person acting as such (in case where no objection is made thereto, either by the collector or by the importer, owner, consignee, or agent), or the single general appraiser in case of no appeal, or of the board of three general appraisers, in all reappraisement cases, shall be final and conclusive against all parties and shall not be subject to review in any manner for any cause in any tribunal or court, and the collector or the person acting as such shall ascertain, fix, and liquidate the rate and amount of the duties to be paid on such merchandise, and the dutiable costs and charges thereon, according to law; \* \* \*.

Paragraph R of section 3.

\* \* \* Such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the seller, shipper, or

owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities, including the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, whether holding liquids or solids, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, * * *.

It will be observed from the foregoing quotations that the provisions for so-called " additional duty " are applicable only to merchandise which lawfully comes before the appraiser for appraisement, and that such duty may be assessed only in cases wherein " such appraised value exceeds the value declared in the entry." The controlling question, therefore, is whether the steel capsules containing the imported gas were part of the *per se* merchandise in the present case or were mere packages or coverings whose value was rather to be ascertained and fixed by the collector himself under the foregoing provisions for packages and coverings, or other " costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

In the case of United States *v.* Spingarn (5 Ct. Cust. Appls., 2; T. D. 34002), this court had before it certain inside packing boxes containing feathers which were packed therein at the point of exportation as part of the process of placing the feathers in condition ready for export shipment. Under tariff provisions essentially similar to those now in question the court held that it was not within the province of the appraiser to appraise the shipping boxes in question in order to determine their dutiable value, but that it was the duty of the collector to ascertain and fix the dutiable cost or value of the boxes in question as part of the containers, coverings, or other costs, charges, and expenses incident to placing the merchandise in condition ready for shipment.

The following extract from the decision just cited (p. 7) will exemplify this statement:

Section 7 defines the cases in which the collector shall submit to the appraiser questions of appraisement and the limitation thereof. It states: "And the collector * * * shall cause the actual market value or wholesale price of such merchandise to be appraised; * * *."

Whenever Congress has spoken of packages and other costs and charges heretofore it does so expressly. Not including such here, this grant of jurisdiction and power to the appraiser does not under any rule of construction invest him with power to appraise that not submitted to him for appraisement, to wit, " packages " or other costs, charges, and expenses.

This definition of the duties and powers of the appraiser concerns the value of the merchandise in the country of exportation, but does not necessarily relate to the same as packed ready for shipment or include the costs, charges, or expenses in so packing the same for shipment. Such a condition of the merchandise may or may not be an element of the actual market value or wholesale price thereof in the country of exportation according to the customs of

the particular trade or country. When such they are not appraised as such, but as a necessary element or part of the actual market value of the goods as sold in the ordinary course of trade in the country of exportation.

This section further provides penalties and exactions where the "appraised value" exceeds the entered value. These provisions have never been held to be related to the costs, charges, and expenses, or coverings, for they are not *per se* deemed a part of the "actual market value."

As will be seen from the foregoing decision the court held therein that a given container or covering of merchandise "may or may not be an element of the actual market value or wholesale price thereof in the country of exportation, according to the customs of the particular trade or country." If the container in a given case be "an element of the actual market value or wholesale price" of the merchandise in the country of exportation, its value when imported should be appraised by the appraiser as part of the value of the merchandise, but if the container in question be not actually a part of the merchandise in the markets of the country of exportation, but be added thereto as a package to place the same in condition for exportation, then the dutiable value of the container would not be determined by the appraiser upon appraisement, but would be ascertained and fixed by the collector alone.

The question therefore arises in the present case whether the capsules in question belong to the first or second description of containers just above described.

On that subject the board speaks in its decision as follows:

There is nothing in the record in this case which in our judgment distinguishes the capsules or containers of this gas from the bottles, jars, demijohns, etc., that are referred to in the paragraph of law just above quoted. The capsules are as essentially the containers of the merchandise as if it were a liquid or a solid substance, and under the rule laid down in United States *v.* Spingarn Bros. (5 Ct. Cust. Appls., 2; T. D. 34002) they are not a subject of appraisement, but it is the duty of the collector to ascertain, fix, and decide their value and assess duty upon them accordingly. The provision of law which provides for additional duty where the appraised value exceeds the value declared in the entry should therefore not be applied in this case. The protest is sustained and the collector directed to reliquidate the entry, omitting the additional duty.

We think that the testimony in the present record sustains the board in this conclusion. The *per se* merchandise in the present case is carbonic acid gas, which is an article that may be purchased in any quantity for shipment in any suitable container in the open markets of the country of exportation. In order to transport the gas from one place to another it must, of course, be packed in some kind of container. The present gas is packed in small capsules in order that it may be delivered to consumers in small quantities. The record does not sustain the view that such capsules already charged with gas are articles of commerce as entireties in the markets of

exportation, but, to the contrary, it appears that the gas is purchased as a separate commodity and packed into the capsules for transportation. By this means the gas is delivered to consumers, and it is common practice for them to return the capsules to dealers after the gas is discharged, and for them to be sent abroad again in the same service. It is apparent that they have no other use. The record therefore sustains the claim that the gas alone is the *per se* merchandise imported in the present case, and the capsules are mere containers, such as come within the provisions for packages, coverings, and other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. Under the rule expressed in the Spingarn case it was the duty of the appraiser to appraise the actual market value of the gas alone, and that of the collector to ascertain and fix the cost or value of the capsules. This conclusion recalls the closing paragraph of the quotation above copied from the Spingarn case, which may be repeated at this point:

> This section further provides penalties and exactions where the "appraised value" exceeds the entered value. These provisions have never been held to be related to the costs, charges, and expenses or coverings, for they are not *per se* deemed a part of the "actual market value."

This conclusion brings the present case, as presented by this record, within the rule in the Spingarn case, *supra*, as held by the board. Its decision is therefore *affirmed*.

#### CONCURRING OPINION.

MONTGOMERY, Presiding Judge: I concur in ordering an affirmance of the decision below on the ground that the case is ruled by United States *v.* Spingarn (5 Ct. Cust. Appls., 2; T. D. 34002).