UNITED STATES *v.* MARTORELLI (No. 2390). MARTORELLI *v.* UNITED STATES (No. 2397).[1]

1. CONSTRUCTION, SECTION 304 (*a*), TARIFF ACT OF 1922—MARKING—ARTICLE— PACKAGE—PENALTY—FIGS IN BASKETS.

For failing to mark an imported *article*, where practicable, so as to indicate the country of its origin, section 304 (*a*), tariff act of 1922, prescribes an additional duty; no penalty is provided for failing to mark a *package*. The *package* of this section is not a "bundle of things packed up" or a "unit of transportation," but is the container or covering in which the *article* or *articles* are placed. Obviously there may be packages within packages. Where figs were imported in baskets, the baskets being contained in larger ones, the figs were the *articles* and the baskets, both large and small, the *packages*. The section requires the marking of the figs, if practicable, and *all* the baskets. The additional duty applies to the failure to mark the *figs*, if practicable; but not to the failure to mark the *baskets*.

2. EVIDENCE, JUDICIAL NOTICE—MARKABILITY.

Whether or not an imported article is capable of being marked without injury so as to indicate the country of origin, as prescribed by section 304 (*a*), tariff act of 1922, is a question of fact, to be determined either by the collector in the performance of his legal duties or by the Board of United States General Appraisers on evidence properly taken. In many cases the determination of such questions would require the testimony of experts in chemistry, mechanics, and other sciences. They are not ordinarily such matters as the court will judicially notice.

3. EVIDENCE, PRESUMPTION FAVORS COLLECTOR—MARKABILITY.

Where the collector released imported articles not marked so as to indicate the country of their origin, it must be presumed that they were incapable of being marked without injury, since otherwise his action would contravene the duty imposed upon him by section 304 (*a*), tariff act of 1922.

United States Court of Customs Appeals, November 4, 1924

CROSS APPEALS from Board of United States General Appraisers, Abstract 46884

[Modified.]

*William W. Hoppin,* Assistant Attorney General, for the United States. *Allan R. Brown,* contra.

---

[1] T. D. 40483.

[Oral argument October 14, 1924, by Mr. Hoppin and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The importation in this case was figs, dried and pressed. The figs were packed in baskets. There were 8 large baskets, each containing 60 smaller baskets of figs of 1 kilo each, 20 large baskets each containing 6 small baskets of about 10 kilos each, and 6 baskets of 30 kilos each. The sample basket of figs introduced in evidence showed the figs to be covered with glazed paper within the basket, the basket being made of woven wood strips and with a cover of the same material.

Neither the figs nor the baskets were marked with the name of the country of origin, when imported, as required by section 304 (a), tariff act of 1922. The collector assessed 10 per cent on the appraised value of the entire entry in addition to the regular duty provided by the act, basing his decision so to do upon said section 304 (a). He then caused the baskets, both large and small, to be marked with the word "Italy," the name of the country of origin, liquidated the entry, and released the merchandise from customs custody. The importer protested and appealed to the Board of General Appraisers. The board found that the 10 per cent penalty was properly assessed upon that part of the importation contained in the small 10 kilo and 1 kilo baskets and improperly assessed upon the 6 baskets of 30 kilos each and rendered judgment accordingly. From that judgment the parties file cross appeals, the importer challenging the legality of the 10 per cent imposition upon a part of his importation, and the Government insisting that the entire shipment should have been subjected to the penalty.

No question of the dutiability of the containers enters into the case.

The controversy here arises out of divergent ideas as to the proper construction to be given to section 304 (a), tariff act of 1922, requiring marking of imported articles and packages. That section is as follows:

SEC. 304. (a) That every article imported into the United States, which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled, shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe. Unless the article is exported under customs supervision, there shall be

levied, collected, and paid upon every such article which at the time of importation is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value thereof, or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

Every package containing any imported article, or articles, shall be marked, stamped, branded, or labeled, in legible English words, so as to indicate clearly the country of origin. Any such package held in customs custody shall not be delivered unless so marked, stamped, branded, or labeled, and until every package of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled shall be marked, stamped, branded, or labeled in accordance with such rules and regulations as the Secretary of the Treasury may prescribe.

Counsel for the importer contends: (1) That the individual figs are *articles*, and the baskets *packages*, under the meaning of said section; (2) that the figs are not capable of being marked, stamped, branded, or labeled without injury, and therefore need not be so marked, etc.; (3) that no penalty accrues under section 304 (*a*) for a failure to mark, stamp, brand, or label a package, and that therefore there can be no penalty exacted on this entry. The Government contends: (1) The *article* is the commercial unit sold to the purchaser, in this case the basket of figs; (2) the penalty of 10 per cent accrues for a failure to mark the said baskets.

This court, in the recent case of Bradford Co. et al. *v.* American Lithographic Co. (12 Ct. Cust. Appls. 318; T. D. 40318), adopted the following definition of the word *article*, as used in section 304 (*a*):

An article is defined by the lexicographers as something considered by itself, a particular object or substance; a material thing of a particular class or kind.

That case involved the determination of whether certain bundles of cigar labels were *articles*, or whether the individual labels were the *articles* intended by the statute. The court there held the individual labels to be the *articles* intended, and also finding them capable of being marked, stamped, branded, or labeled, without injury, held the imposition of the 10 per cent penalty justified for the failure to so mark them.

The case just cited announced no new doctrine, but reiterated the often expressed opinions of this court in matters involving similar issues—United States *v.* Downing & Co. (7 Ct. Cust. Appls. 479; T. D. 37052); United States *v.* Suzarte & Whitney (8 Ct. Cust. Appls. 99; T. D. 37219); United States *v.* Thomsen & Co. (9 Ct. Cust. Appls. 223; T. D. 38199); United States *v.* Yamamoto & Co. (10 Ct. Cust. Appls. 70; T. D. 38338). To the same effect are the following: Junge *v.* Hedden (146 U. S., 233); in re Hempstead (96 Fed. 94); United States *v.* Leggett (66 Fed. 300).

Section 304 (*a*) of the tariff act, requiring marking of imported goods, is not new in tariff laws. Similar provisions were found in the tariff act of July 24, 1897 (sec. 8), the tariff act of August 5, 1909

(sec. 7), and the tariff act of October 3, 1913 (sec. IV, par. F, sub-sec. 1).

The following portion of section 304 (*a*), tariff act of 1922, is, however, new to the law:

* * * Unless the article is exported under customs supervision, there shall be levied, collected, and paid upon every such article which at the time of importation is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value thereof, or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

The language of the statute is plain and unambiguous, and hence no side lights are required for its proper reading. If, however, such aids to interpretation were needed, they would be supplied by an inspection of the hearings on the tariff act of 1922, H. of R., pp. 2453–2459 and 4341–4343. Complaint was made to the Committee on Ways and Means, by American manufacturers, that importers were bringing into the American market articles of foreign manufacture not properly marked, notably surgical instruments, cutlery, razor blades, and rugs, and that it was impossible to enforce the penal provisions of the statute against the nationals of foreign countries. It is obvious that it was to cure this defect in the law the quoted provision was inserted in the act of 1922 as a sort of proceeding in rem, and was intended to reach and apply to the article of importation itself and not to the package or container.

Any other construction would lead to endless abuses. If a package of razor blades, a box of handkerchiefs, or a basket of figs, as contended by the Government here, should be considered as an *article*, a marking of the outside wrapper of such package or box or basket would suffice. In such cases the importer would have it in his power to merely change the container after release from customs custody and send his imported merchandise into the American market free from any marks disclosing its foreign origin. In our opinion, such was not the purpose of the law.

The word "package" has been variously construed in legal decisions relative to customs duties according to the particular statute involved. Sometimes it has been construed to mean a "bundle of things packed up," a "unit of transportation."—Bush & Co. *v.* United States (6 Ct. Cust. Appls. 401; T. D. 35974). In the case just cited the statute in question was paragraph 220, tariff act of 1913, providing for a duty on—

Lemons, limes, oranges, grapefruit, shaddocks, and pomelos in packages—

it was held that two wooden boxes of oranges, tied together with grass rope, and in the customary method, constituted a package, within the statute.

In other cases, the word "package" has been held to mean the container or covering, in which the article or articles are placed. Such was the construction in Woh & Co. *v.* United States (2 Ct. Cust. Appls. 274; T. D. 31978). In that case the statute involved paragraph 251, tariff act of 1909, reading in part:

PAR. 251. Beans, peas, mushrooms, and truffles, prepared or preserved, or *contained in tins, jars, bottles, or similar packages.* [Italics not quoted.]

See, also, Wright & Graham Co. *v.* United States (5 Ct. Cust. Appls. 453; T. D. 34976).

It is manifestly in the latter sense that the word "package" is used in the second paragraph of section 304 (*a*). For a failure to mark the article of importation, which should go into the hands of the consumer, if capable of being marked, the Congress provided a penalty in the 10 per cent provision of the law, but for a failure to mark the container, or "package," no such penalty was imposed.

For the reasons suggested, we are of the opinion the *articles*, in this case are the individual figs, and the *packages* the baskets, small and large, containing them. It is obvious there may be packages within packages, as in the case now before us, and in such case each of said packages should be marked as provided for in the second paragraph of section 304 (*a*). It follows, therefore, that the Board of General Appraisers erred in holding the penalty of an additional 10 per cent duty was properly imposed for the absence of proper marking on the one kilo and ten kilo baskets at the time of importation.

The question whether the figs of this importation were capable of being marked, stamped, branded or labeled, without injury, within the meaning of section 304 (*a*), does not properly arise on this record, and we desire to express no opinion in that respect. The collector released the figs without marking. Assuming that the collector performed his legal duty, it appears he found the figs not capable of being marked, stamped, branded or labeled without injury; otherwise he could not have released them without marking. There was no testimony of any kind offered before the Board of General Appraisers as to whether or not these figs were capable of being marked as specified by section 304 (*a*). No contention is made here on that point, it being apparently assumed that the figs in question are incapable of being marked, according to the statute.

The question in each case as to whether an imported article is capable of being marked as provided by section 304 (*a*), without injury, is a question of fact, to be determined either by the collector, in the performance of his legal duties, or by the Board of General Appraisers, on evidence properly taken.—American Bead Co. *v.* United States (7 Ct. Cust. Appls. 18, T. D. 36259); United States *v.* Lee Co. (9 Ct. Cust. Appls. 111, 112; T. D. 37977); United States

*v.* Squibb (2 Ct. Cust. Appls. 353, 355; T. D. 32081); Vitelli & Son *v.* United States, (7 Ct. Cust. Appls. 243, 275; T. D. 36544).

In many cases the determination of such matters would require the testimony of experts in chemistry, mechanics, and other sciences. They are not such questions as this court will ordinarily take judicial notice of.

For reasons herein assigned, the judgment of the Board of General Appraisers is affirmed as to the six large baskets of figs, and reversed as to that portion of the shipment contained within the small one and ten kilo baskets.

*Modified.*