GIVAUDAN DELAWANNA, INC. *v.* UNITED STATES (No. 3757)[1]

---

[1] T. D. 47104.

United States Court of Customs and Patent Appeals, May 2, 1934

*J. W. Bevans* for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Daniel I. Auster,* special attorney, of counsel), for the United States.

[Oral argument April 5, 1934, by Mr. Bevans and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges [2]

Graham, Presiding Judge, delivered the opinion of the court:

The appellant imported certain unground cloves at the port of New York, under the Tariff Act of 1930. These were in bulk, packed in bales of about 200 pounds each. The bales were each about 3 feet long and about 1½ feet in diameter. The cloves were loose, having no containers but the covering of the bale, which consisted of grass matting, tied with rope. The bales were marked upon the outside as follows: "B.T.B. New York ZBAR CLOVES." "ZBAR" was supposed to represent the word "Zanzibar". There was no other attempt to mark either the cloves or the bales.

The collector at the port was of the opinion that this was an insufficient marking, under the provisions of section 304 of the Tariff

[2] HATFIELD, J., did not participate in this case.

Act of 1930, to indicate the country of origin, caused the outside of the bales to be marked, and assessed an additional duty of 10 per centum upon the goods, under the provisions of said section. The importer protested. The United States' Customs Court overruled the protest, and the importer has appealed.

The importer did not claim in the trial court, and does not claim here, that the marking "ZBAR" was sufficient to indicate "Zanzibar", the country of origin. Certainly it could not be so considered under the rule announced in *American Burtonizing Co.* v. *United States*, 13 Ct. Cust. Appls. 652, T.D. 41489.

Two claims are made: First, that said section 304 imposes an additional duty of 10 per centum only when the article or its *immediate container* is not marked, and that the grass-matting bale cover was not an *immediate* container, but the package, or outer covering, of the cloves; second, that at the time of the importation of these cloves, a regulation, T.D. 44202, issued by the Secretary of the Treasury under the authority of said section 304, was in full force and effect, which regulation excepted "crude substances or materials and their containers", from the marking requirements of said section, and that such exception included the goods here imported.

We shall first consider the second contention, for, if this be correct, no need exists to consider the first. T.D. 44202 was promulgated August 15, 1930, and is published in 58 Treas. Dec. 144. This regulation had not been rescinded at the time of the importation here involved.

Said section 304 provides, in part:

* * * The Secretary of the Treasury may, by regulations prescribed hereunder, except any article from the requirement of marking, stamping, branding, or labeling if he is satisfied that such article is incapable of being marked, stamped, branded, or labeled or cannot be marked, stamped, branded, or labeled without injury, or except at an expense economically prohibitive of the importation, or that the marking, stamping, branding, or labeling of the immediate container of such article will reasonably indicate the country of origin of such article.

Said T.D. 44202 provided, in part:

The following regulations governing the marking of imported merchandise pursuant to the provisions of section 304 and paragraphs 354, 355, 357, 358, 359, 360, 361, 367, 368, and 1553 of the Tariff Act of 1930 are hereby promulgated for the information and guidance of customs officers and others concerned:

* * * * * * *

SEC. 4. EXCEPTIONS TO MARKING REQUIREMENTS.—(a) The following articles and their containers and the packages in which imported are hereby excepted from the marking requirements of section 304 and paragraphs 354, 355, 357, 358, 359, 360, 361, 367, 368, and 1553 of the Tariff Act of 1930:

* * * * * * *

(5) Crude substances or materials and their containers.

It will first be observed that said section 304, while it gives to the Secretary power to except any article from marking, gives to him

no power to except any container from such marking. A clear distinction is made in said section 304 (a) between the marking of the article and the marking of the container.

This being true, while the regulation may have excepted the cloves from marking, it could not except the containers therefrom. Neither being marked, it becomes unnecessary for the purposes of this discussion to determine whether unground cloves may be considered as "crude substances and materials" within the meaning of said T.D. 44202.

In the recent case of *Zaloom* v. *United States*, 21 C.C.P.A. (Customs) 518, T.D. 46972, we had this section before us for construction. There sausage casings, unmarked, and incapable of being marked, were imported in barrels, with no other containers. We held that the barrels were the containers of said sausage casings, were such containers as were intended by the additional duty clause (b) of said section 304, and for the failure to mark which, the articles not being marked, the additional duty was properly imposed. That case, we believe, is decisive here.

It has been contended here that an additional duty may only be imposed for failure to mark an *immediate container* and will not be imposed for failure to mark *any other container* or *package*. This seems to be the reasonable construction of this paragraph, when considered with the legislative history of the paragraph.

It will be observed that in the hereinbefore quoted portion of said section 304 (a), the Secretary of the Treasury may except articles from marking, if a marking of the *immediate* container will "reasonably indicate the country of origin of such articles." Again, the same subparagraph, in its opening language, states: "Every article imported into the United States, and its immediate container, and the package * * * shall be marked * * *."

It was, of course, known to the Congress when H.R. 2667, which afterwards became the Tariff Act of 1930, was being considered, that some difficulty had been experienced under section 304 of the Tariff Act of 1922, arising from containers within containers, in which articles were sometimes imported. *United States* v. *Martorelli*, 12 Ct. Cust. Appls. 327, T.D. 40483, which dealt with figs, is an example. From an examination of the hearings before the Senate Committee on Finance, and from the reports of the Committee on Ways and Means of the House, and of the Finance Committee of the Senate, it seems apparent that the legislative thought was to so amend said section 304 as to make it more flexible in operation and to insure that the purchaser of the article might be informed by the marking of the article, or its container which was most likely to come to the consumer's notice, of the origin of the article. The legislative history has been quite fully discussed by us in *Kraft Phenix Cheese Corp.* v. *United States*, 22 C.C.P.A. (Customs) 111, T.D. 47103, decided concurrently herewith, and therefore need not be further discussed here.

Our conclusion is that, while all containers and packages must be marked, under this section, an additional duty is to be levied only when the article or the *immediate* container is not marked. If either be marked, the additional duty does not apply.

In our judgment, however, the immediate containers of the imported cloves were the grass-matting coverings of the bales. These containers came directly within the common meaning of the word "immediate:"

Immediate 1. Having no intermediary or intermediation. Specif. a next in line or relation; directly connected, succeeding, or the like; not secondary or remote; as, *immediate* followers; an *immediate* heir. (Webster's New International Dictionary, 1932.)

The judgment of the United States Customs Court is, therefore, *affirmed*.

### CONCURRING OPINION

BLAND, Judge: I concur in the conclusion reached by the majority in this case because it is obvious that the article could not be marked, and since the container was not marked, the additional duty was properly assessed. It is my view that if the article could have been marked, then the new language used by Congress in section 304 of the Tariff Act of 1930 requires that both container and article be marked, and that if either of them is not marked, the importer subjects himself to the additional duty. At any rate, regardless of whether the duty attaches if the container is not marked and the article is marked, I feel sure that Congress never intended to weaken the marking law to the extent that a marking of the container would release the importer from additional duty for failure to mark the article if it could be marked.

I find nothing in the context of the section or in the legislative history which justifies the statement in the majority opinion which reads "if either be marked, the additional duty does not apply."

In *Kraft Phenix Cheese Corp.* v. *United States*, 22 C.C.P.A. (Customs) 111, T.D. 47103, decided concurrently with this case, the three or four cheeses were marked and the container not marked. Let us suppose that the container was marked and the cheese had not been marked. The majority is of the opinion that while the cheese would have to be marked in customs custody, no additional duty could be attached. If the article, cheese, could have been marked, I think Congress intended that the additional duties would attach if the importer failed to mark it, since this is the article that goes to the consumer.

This view is not only sustained by the context of the provision but by the legislative history. While the legislative history shows that Congress intended to clarify this section in certain respects complained of by importers who appeared before the committees of Congress, I find nothing that justifies the conclusion that Congress ever intended to excuse the importer from having the article marked when it was

imported, if it was capable of being marked. It is true that Congress took out of section 304 of the Tariff Act of 1922 considerable language including the phrase "at the time of its manufacture or production", and inserted certain other language chiefly directed to the duties of the Secretary of the Treasury with respect to determining when an article could or could not be marked. It seems clear that the changes made were not for the purpose of relieving the importer from paying additional duty if he failed to mark the article but were for the purpose of not subjecting him to *two* additional duties, and for the additional purpose of authorizing the Secretary of the Treasury to indicate a great many articles which did not need to be marked so that the importing public would know what to expect in this regard.