ASIAM, INC. *v.* UNITED STATES (No. 4047)[1]

---

[1] T. D. 49065.

United States Court of Customs and Patent Appeals, May 29, 1937

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

[Oral argument April 7, 1937, by Mr. Place and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, overruling the protest of appellant against the collector's assessment of an additional duty of 10 per centum ad valorem upon an importation of cherries, packed in barrels, because of his holding that the barrels were not properly marked under the provision of section 304 of the Tariff Act of 1930, the pertinent portions of which read:

SEC. 304. MARKING OF IMPORTED ARTICLES.

(a) MANNER OF MARKING.—Every article imported into the United States, and its immediate container, and the package in which such article is imported, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place, in such manner as to indicate the country of origin of such article, in accordance with such regulations as the Secretary of the Treasury may prescribe. Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. The Secretary of the Treasury may, by regulations prescribed hereunder, except any article from the requirement of marking, stamping, branding, or labeling if he is satisfied that such article is incapable of being marked, stamped, branded, or labeled or can not be marked, stamped, branded, or labeled without injury, or except at an expense economically prohibitive of the importation, or that the marking, stamping, branding, or labeling of the immediate container of such article will reasonably indicate the country of origin of such article.

(b) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article or its container is not marked, stamped, branded, or labeled in accordance with the requirements of this section, there shall be levied, collected, and paid on such article, unless exported under customs supervision, a duty of 10 per centum of the value of such article, in addition to any other duty imposed by law, or, if such article is free of duty, there shall be levied, collected, and paid a duty of 10 per centum of the value thereof.

(c) DELIVERY WITHHELD UNTIL MARKED.—No imported article or package held in customs custody shall be delivered until such article (and its container) or package and every other article (and its container) or package of the importation, whether or not released from customs custody, shall have been marked, stamped, branded, or labeled in accordance with the requirements of this section. Nothing in this subdivision shall be construed to relieve from the requirements of any provision of this Act relating to the marking of particular articles or their containers.

Manifestly the imported merchandise, the cherries, is incapable of being marked and no issue with respect to its marking is involved. Also, it is shown that there were no containers other than the barrels. So, the only issue in the case relates to the marking upon the barrels. That these required marking, and that if they were not properly marked, the merchandise itself was subject to the additional duty of 10 per centum ad valorem is conceded. See the case of *George B. Zaloom* v. *United States*, 21 C. C. P. A. (Customs) 518, T. D. 46972, with cases therein cited, where this court construed section 304, *supra*, in part, and pointed out certain distinctions between it and its predecessor section, relating to marking, in the Tariff Act of 1922.

In the instant case the barrels involved were labeled in the following manner as described in the decision of the trial court:

\* \* \* The evidence introduced at the trial establishes that at the time of importation paper labels, containing information that the cherries were produced in Italy, were attached to top and bottom of each barrel in this shipment, \* \* \*.

A somewhat more specific description is given in the brief on behalf of the Government as follows:

\* \* \* On the head or top circular surface of each barrel was tacked by four tacks a circular paper label about 7¾ inches in diameter, and on the opposite surface of the barrel was tacked a small oblong paper label about 4¼ inches by 3 inches. Upon both of these labels, among other things, was printed the words, "Sulphured Cherries Product of Italy." These labels were marked in evidence as Collective Exhibit 1.

To the foregoing it may be added that the evidence is to the effect that the staves of the barrels projected about an inch beyond the barrel heads and the attached labels were protected by that projection; also that the smaller label having the notation "Cherries prepared in Sulphur Dioxide solution $(SO_2)$," is one required by the regulations of the United States Department of Agriculture.

Notwithstanding the foregoing marking, the collector withheld delivery of the goods, evidently proceeding under section 304 (c), *supra*, until the barrels had been further marked "Product of Italy" by means of a stencil, such mark being applied on a stave of each barrel.

Neither the "Report of the Collector" nor the "Answer to Protest" by the appraiser is very specific in stating the reasons for the action taken by the collector. The answer says:

\* \* \* The barrels being the immediate containers were found, upon examination, to be not legally marked, stamped, branded, or labeled with the country of origin, as required by Section 304 (b) of the Act of 1930.

The collector's report states:

The merchandise in question incapable of being marked and its immediate container were imported without the country of origin marking required by Section 304 Act of 1930. Note indorsement on summary of examination and Appraisement sheet; also official certification of marking carried out after importation.

Apparently the notations so referred to are, respectively, one reading "Sampler Reports:—Marked on paper tags only" and one addressed to "Collector, Law Division" reading "This is to certify that the goods detained have been legally marked Product· of Italy (Stencil)."

The case has been proceeded with upon the theory that the marking by means of the paper labels was not sufficient in the opinion of the collector to meet the requirement of that sentence of section 304 (a), supra, reading "Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit," it being the collector's view that· this requirement applied to containers (in this· particular case the barrels) as well as to the actual article imported (when capable of being marked which was not · here the case).

It is the theory of appellant that the phrase, "as nearly indelible and permanent as the nature of the article will permit," does not apply to the container but only to the article, and the argument on its behalf is largely in support of that theory. It is not conceded, however, that even if it does apply to the container, the marking on the barrels as imported was not sufficient reasonably to meet the statutory requirements.

So, we have here an issue or issues differing from any heretofore presented to this court. In the Zaloom case, supra, barrels containing sheep's intestines were involved, but those barrels were not marked in any manner to show the country of origin of the merchandise which they contained. It was held that, under the 1930 act, marking of the barrels was required, and that because they were not marked the imposition of a 10 per centum ad valorem duty upon the intestines, themselves free of duty, was proper. It was not there a question of whether the barrels were properly marked since they were not marked at all.

In the view which we take of the instant case, it is not necessary to determine whether the "indelible and permanent" marking is required upon the package or container as well as upon the article, ·because we are of the opinion that the marking of the barrels in their imported condition by the means above described was sufficient reasonably to meet the statutory requirement. It is true that the paper labels and tags were attached to the barrel heads by means of tacks and not by pasting, but it is conceded in oral argument by counsel for the Government that the means used were probably better than pasting in view of the possible exposure to the salt saturated atmosphere during the voyage from Italy to this country.

In the case of United States v. Martorelli, 12 Ct. Cust. Appls. 327, T. D. 40483, arising under the Tariff Act of 1922, this court had occasion to point out that one purpose of the marking statute is to

enable the consumers of imported merchandise to know the country of origin. In that case, as here, the actual imported merchandise (figs) was held presumably incapable of being marked since the collector did not require its marking, and it was held, in effect, that the marking required by the collector to be placed upon the baskets was sufficient, and, since under the 1922 marking statute no provison was made for the assessment of additional duties because the *packages* or baskets were not marked at the time of importation, we sustained the importer's protest.

Concededly, under the 1930 act, the package, or container, must now be marked or additional duties are assessable. Obviously, the merchandise itself can not be so marked as to enable the ultimate consumer of the *cherries* to determine the country of origin, but the barrels were so marked, it seems to us, that the consumers of the *barrels* of *cherries* and the public generally, if that be important, could readily see the country of origin, and the labels were specific as to Italy being the country of origin of the cherries. The testimony is to the effect that the packed barrels weighed five hundred pounds each, which reasonably would seem to be a wholesale quantity.

There is nothing in the record to suggest any suspicion of an attempt at evasion of the law on the part of the importer. One of its agents testified that for twenty years it had been importing cherries in barrels marked as were those in the instant case and this was the first occasion on which such goods were required to be further marked before being released from customs custody. As, of course, the statute does not require the impossible, nor does it, in our opinion, require anything except that which is reasonable. It may be said that even the stenciling required upon the staves by the collector is not as inidelible and permanent as some forms of marking—for example, burning or cutting the name of the country into the staves—might be. So, it might be questioned whether even the collector's theory of the statute's meaning was strictly complied with by mere stenciling.

In any event, we are of opinion that the marking shown to have been borne by the barrels at the time of importation was sufficient reasonably to comply with the statutory condition.

Accordingly, the judgment of the United States Customs Court is *reversed* and the case *remanded* for further action in accordance with this decision.

GRAHAM, Presiding Judge, dissents.

HATFIELD, Judge, concurring: It appears from the majority opinion, and from the record in the case, that the collector assumed that the marking, stamping, branding, or labeling of a container should, under the statute, be as nearly indelible and permanent as the nature of the container would permit.

Counsel for appellant contend that the language, "Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit," contained in section 304 (a) of the Tariff Act of 1930, does not apply to containers, but only to the articles of importation.

The majority opinion contains the following statement:

In the view which we take of the instant case, it is not necessary to determine whether the "indelible and permanent" marking is required upon the package or container as well as upon the article, because we are of the opinion that the marking of the barrels in their imported condition by the means above described was sufficient reasonably to meet the statutory requirement. It is true that the paper labels and tags were attached to the barrel heads by means of tacks and not by pasting, but it is conceded in oral argument by counsel for the Government that the means used were probably better than pasting in view of the possible exposure to the salt saturated atmosphere during the voyage from Italy to this country.

Section 304 (a), *supra*, requires that the immediate containers of articles of importation shall be so marked, stamped, branded, or labeled as to "reasonably indicate the country of origin" of such articles.

It seems to be clear from the language of section 304 (a), which provides that "Every article imported into the United States, and its immediate container, and the package in which such article is imported, shall be marked, stamped, branded, or labeled in legible English words, in a conspicuous place, in such manner as to indicate the country of origin of such article * * *. Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent *as the nature of the article* will permit," that it is the *article only*, and not the container, which must be marked, stamped, branded, or labeled "as nearly indelible and permanent as the nature of the article will permit." [Italics mine.]

I am unable to understand how any other construction can properly be placed upon the provisions of section 304 (a), nor am I able to understand how the majority of the court can reach the conclusion it has in this case without so construing those provisions.

It seems obvious to me that if the language "shall be as nearly indelible and permanent as the nature of the article will permit" applies to containers of imported articles, the containers—barrels, in the case at bar—were not properly marked. However, as I construe the statute, it is the *article only* to which the language "indelible and permanent" applies, and the containers need only be so marked, stamped, branded, or labeled as reasonably to indicate the country of origin of the article.

I concur in the conclusion reached by the majority, solely on the ground that the containers, barrels, were not required to be "indelibly and permanently" marked, and that, under the facts set forth in the majority opinion, they were sufficiently marked to meet the statutory requirements.