SHELDON & ᵂCo. *v.* UNITED STATES (No. 2834)[1]

MARKING—TIME OF MANUFACTURE OR PRODUCTION—FROZEN CHICKENS.

Section 304, Tariff Act of 1922, directs the marking of imported merchandise "at the time of its manufacture or production" so as to indicate the country of origin, if practicable. It is not limited to articles that are manufactured or produced by mechanical arts or sciences. It includes frozen chickens. Since the marking of the chickens was shown to be practicable, the additional duty for not marking them was correctly imposed, and whether the time of their production was the time of the killing or freezing or some other time is of no importance.

United States Court of Customs Appeals, March 9, 1927

APPEAL from United States Customs Court, Abstract 661

[Affirmed.]

*Thomas L. Stitt* for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler*, special attorney, of counsel), for the United States.

[Oral argument January 25, 1927, by Mr. Stitt and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

This importation consists of boxes of frozen chickens. Each box is lined with paper and contains some 12 chickens. Neither the boxes nor the chickens were marked to indicate the country of origin.

The collector assessed a duty of 10 per centum on the appraised value of the importation under the provisions of section 304 of the Tariff Act of 1922 in addition to the regular duty provided by the act.

Importer protested, claiming that the merchandise was not capable of being marked at the time of its production as provided in the section, and the appraiser, whose answer to the protest was received in evidence, expressed the same opinion.

When the case came on for hearing before the board, now the United States Customs Court, the real importers, the entry here having been made by the appellants for them, produced a witness who testified in substance that, as sold, the article was the individual chicken; that each chicken could not very well be marked without spoiling it; that a tag could be tied on the bird before it was frozen; that placing a tag on the bird's leg would not injure it; that he had not seen it done; that his concern as a side line dealt in meats; that he had seen meats marked with a rubber stamp, "United States Inspection;" that such stamp did not ruin the meat; that it could be cut off.

---

[1] T. D. 42057.

The board held that the evidence, as a whole, showed that—

the merchandise could have been marked with the country of origin in some of the ways prescribed in section 304 of the act of 1922 without injury to the merchandise—

and overruled the protest.

The relevant part of section 304 is as follows:

(a) That every article imported into the United States, which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling' shall be as nearly indelible and permanent as the nature of the article will permit. * * *

Every package containing any imported article, or articles, shall be marked, stamped, branded, or labeled, in legible English words, so as to indicate clearly the country of origin. * * *

Counsel for importer ingeniously argues that as the statute provides the marking shall be done at the time of the manufacture or production of imported merchandise, it becomes necessary to determine when these chickens were produced, whether at the time of killing or at the time of freezing, which he argues is "a *reductio ad absurdum.*" For that reason he contends that the section does not apply to such products as this importation but rather to those manufactured or produced by the mechanical arts or sciences abroad.

We think this contention may be disposed of by saying that it is not necessary to determine the precise point of time when these chickens were produced for the purpose of the statute. The fact is they were produced in a foreign country before exportation. The statute expressly provides that every article imported into the United States capable thereof, without injury, shall be marked, etc., at the time of its manufacture or production so as to indicate the country of origin, and also that every package containing such imported article shall be likewise marked. The meaning of the word production does not admit of the interpretation that it is limited to articles that are manufactured or produced by mechanical arts or sciences; it covers natural as well as manufactured products. See *United States* v. *Martorelli,* 12 Ct. Cust. Appls. 327, where figs were held to be articles within the contemplation of section 304.

The real question therefore is, could these chickens have been marked, stamped, branded, or labeled without injury at the time of their production? It was the duty of the importer to show by a fair balance of the testimony that it could not reasonably be done.

On that issue there is little to be said. The testimony of the witness we think, fairly points out one method by which this could have been accomplished and, while we are not required in this case to point out

other methods of marking, stamping, branding, or labeling which might have been applied to these chickens, we. can not close our eyes to the fact that these dead chickens afforded ample opportunity, and without injury, to mark them in some way in legible English words, in a conspicuous place, so as to indicate the country of origin, sufficiently indelible and permanent, in view of the nature of the commodity, to comply with the statute.

The judgment below is *affirmed.*