UNITED STATES *v.* AMERICAN SPONGE & CHAMOIS Co. (No. 2975[1])

United States Court of Customs Appeals, April 9, 1928

*Charles D. Lawrence,* Assistant Attorney General (*Reuben Wilson* and *Oscar Igstaedter,* special attorneys, of counsel), for the United States.

*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellee.

[Oral argument October 5, 1927, by Mr. Igstaedter and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The merchandise imported in this case was 45 bales of crude sponges, the bales or coverings consisting of burlap tied with rope, as shown by the report of the assistant appraiser. After importation,

[1] T. D. 42731.

the assistant appraiser reported the goods as not legally marked and the collector gave the following notice to the importer:

Referring to your importation of sponges * * * you are informed that the appraiser has returned the invoice with the statement that the bales Star 2873 * * * are not legally marked as prescribed by the existing tariff act.

You are, therefore, instructed not to dispose of any of the bales heretofore delivered to you under the provisions of your penal bond given at time of entry until such bales have been marked and released according to law. * * *

Thereafter the goods were transferred to the seventh floor of the warehouse and marked with the word "Nassau" upon the bales, after which the storekeeper and foreman, on November 26, 1923, and November 22, 1923, respectively, certified that the same were legally marked, and the goods were then delivered to the importer. There after, on May 8, 1924, the collector liquidated the entry, and assessed a 10 per cent additional duty under section 304 of the Tariff Act of 1922. On the hearing in the court below no testimony of any kind was introduced, and all the facts must be gathered from the record above recited. The Customs Court sustained importer's protest and the Government has appealed.

Section 304 (a) of the Tariff Act of 1922 is as follows:

Sec. 304. (a) That every article imported into the United States, which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled, shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe. Unless the article is exported under customs supervision, there shall be levied, collected, and paid upon every such article which at the time of importation is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value thereof, or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

Every package containing any imported article, or articles, shall be marked, stamped, branded, or labeled, in legible English words, so as to indicate clearly the country of origin. Any such package held in customs custody shall not be delivered unless so marked, stamped, branded, or labeled, and until every package of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe.

The Secretary of the Treasury shall prescribe the necessary rules and regulations to carry out the foregoing provisions.

In the first place it will be observed that there is nothing in this record to indicate that the sponges were not properly marked when

imported. The collector found only that the bales were not marked and so advised the importer in his notice. If the sponges were properly marked, then no additional duty under section 304 could be imposed on their account. If the bales were not properly marked, then the importer must mark them, but no additional duty can be imposed for a failure to do so. This is well-settled law in this court. *Hobe Button Co.* v. *United States*, 12 Ct. Cust. Appls. 341, T. D. 40488; *United States* v. *Martorelli*, 12 Ct. Cust. Appls. 327, T. D. 40483; *Hudson Forwarding Co.* v. *United States*, 14 Ct. Cust. Appls. 94, T. D. 41587; *Yohalem & Diamond* v. *United States*, 14 Ct. Cust. Appls. 92, T. D. 41586. There is no fact appearing from the record, nor is there any legal presumption which can be called upon, to demonstrate that these individual sponges were not properly marked when imported. Therefore, so far as we may be advised by what is before us, the collector required the packages to be marked and assessed an additional duty of 10 per centum because said packages were not so marked upon importation.

But it is argued by the Government that the subsequent liquidation by the collector, in which he assessed the additional 10 per centum, must create the legal presumption that he found the goods—that is, the sponges—were not legally marked; that this presumption overcomes any other presumption arising from his previous action, and will justify the imposition of such additional duty, in the absence of some showing to the contrary.

This position is contrary to the weight of authority in this court and not in consonance with a reasonable construction of the law.

This question was first presented to us in United States *v.* Martorelli, supra. There certain figs were imported in baskets, some in large baskets and some in small baskets, which, in turn, were inclosed in large baskets. It was shown that neither the figs nor the baskets were marked in conformity with the law. The collector caused the baskets to be marked, assessed an additional duty of 10 per centum, liquidated the entry, and released the goods. The Board of General Appraisers sustained the additional duty on the small baskets, holding them to be the article of importation, and overruled the imposition of the additional duty on the large baskets, holding them to be containers. Cross appeals were filed, the Government claiming that the additional duty should have been assessed against the entire importation, and the importer claiming none should have been assessed. The question of the legal effect of the collector's actions was, therefore, directly involved. This court held:

The collector released the figs without marking. Assuming that the collector performed his legal duty, it appears he found the figs not capable of being marked, stamped, branded, or labeled without injury; otherwise he could not have released them without marking. * * * The question in each case as to whether an imported article is capable of being marked as provided by sec-

tion 304 (a), without injury, is a question of fact, to be determined either by the collector, in the performance of his legal duties, or by the Board of General Appraisers, on evidence properly taken.

This court thereupon held that no additional duty could be collected. The point involved in the case at bar was directly involved in the *Martorelli* case. The underlying theory upon which that decision was arrived at was that the legal presumption being that the collector had found the articles not capable of being marked, he was attempting to assess an additional duty for a failure to mark the package or container. For this, of course, there was no legal authority. The collector in the *Martorelli* case did exactly what the collector in the case at bar has done, and the case is, therefore, directly in point.

*Di Martino* v. *United States*, 14 Ct. Cust. Appls. 57, T. D. 41554, was a case on all fours with the *Martorelli* case, *supra*. In that case the baskets containing the figs were required to be marked, and the additional duty of 10 per centum was imposed. *There was nothing in the record to indicate whether the figs were capable of being marked or not.* In this respect, it was exactly as the case at bar. But the court held that the additional duty was improperly assessed.

The question again arose in *Burstein & Sussman* v. *United States*, 14 Ct. Cust. Appls. 255, T. D. 41877, where sanitary napkins inclosed in pasteboard packages were involved. The collector in that case, as in the case at bar, caused the packages, and not the napkins, to be marked, assessed an additional duty of 10 per centum, liquidated the entry, and released the goods. This court held that the imposition of such additional duty was improper, saying:

The collector did not require the importer to mark or label the napkins, and he delivered the goods to the importer without such marking. We must, therefore, presume that they were not capable of being marked, stamped, branded, or labeled without injury. To hold otherwise would mean that the collector failed to perform the duty imposed upon him by law. The marking ordered by the collector was an official determination by him that the napkins themselves could not be marked without injury and as the presumption of correctness attaching to that decision had not been overcome, it must be held that the napkins themselves were not capable of being marked, stamped, branded, or labeled, as prescribed by section 304 (a).

This case also is directly in point, the collector having taken action exactly as the collector did in the case at bar.

Following these cases, and announcing the same rule, was *Gray & Co.* v. *United States*, 15 Ct. Cust. Appls. 122, T. D. 42192. In this case cheeses, in containers of cheesecloth and paraffin, were involved. The collector required the marking of the cheesecloth covering, assessed an additional duty of 10 per centum, and released the goods. The court said:

The collector required the paraffin-coated cheesecloth containers to be marked so as to indicate the country of origin. He did not require that the cheese

itself—the article of importation—be marked, stamped, branded, or labeled. It must be presumed, therefore, that the collector found that the cheese was incapable of being marked, stamped, branded, or labeled without injury.

The case relied upon by the Government in the case at bar is *Atterbury Bros.* v. *United States*, 14 Ct. Cust. Appls. 416; T. D. 42056. It is claimed that the opinion in this case, announced after the decision in the *Martorelli, Di Martino* and *Burstein & Sussmann* cases, *supra*, and before the decision in *Gray & Co.* v. *United States*, *supra*, is in conflict therewith and announces a proper rule, namely, that where the collector has assessed the 10 per centum additional duty, that this must be taken as a finding by him that the articles of importation were in fact capable of being marked, that they were not so marked, and that, therefore, the additional duty attaches. The *Atterbury* case, *supra*, dealt with rolls of paper, in wooden cases. The collector caused the cases to be marked, assessed an additional duty of 10 per centum, and released the goods. Evidence was introduced before the Board of General Appraisers on the issue whether the goods were capable of being marked, and upon which the board held that the importer had not proved the rolls could not be marked. This court held that, the board having determined the matter upon the evidence and the court not being able to say that the finding of the board was contrary to the evidence or was not supported by the weight of the evidence, the judgment below must be affirmed. It is true that the court did say, in that case, that any presumption arising from the release of the goods without marking was overcome "by the fact that he actually assessed the duty provided in the section." This statement was not necessary to a decision of the matter then before us, and in so far as it may differ with the conclusion arrived at in the cases heretofore cited herein, it should not be taken as expressing the views of this court on the issues involved in that case or here.

There are, moreover, the most compelling reasons for accepting the rule of construction adhered to in the cases hereinbefore cited. Speaking of the so-called marking statute, section 304, this court said in *Hobe Button Co.* v. *United States, supra:*

Clearly Congress intended that where it was practicable to do so they would require that all imported articles be marked in such a way that the purchasers of the articles in this country would know the country of origin. No doubt one of the reasons which prompted the legislative body to make this provision was to stimulate pride in a home production.

To accomplish this desirable purpose, the collector was directed to require the marking of the articles imported, where this could be done without injury, and was positively enjoined by the law not to release the goods until this had been done. If the statute should be construed as urged by the Government here, its beneficial purposes

would be entirely defeated. The law was not intended so much to derive revenue as it was to protect the American manufacturer and purchaser of the merchandise. If it be held that the collector may release the goods into commerce without marking and then create the presumption, by merely assessing a 10 per centum additional duty, that the goods were capable of being marked and were not so marked, then the portion of the statute directing him to require the marking (if they be capable of marking) is 'directory only and not mandatory, and may be disregarded by him whenever he so desires. It is obvious that the basis of the right of the collector to assess an additional duty of 10 per centum in such cases is the fact that he has found the articles of importation to be capable of being marked, without injury, and that they were not marked upon importation. Without this basis and unless he has so found he can not assess this duty. What more convincing proof may be had of his finding than by his release of the articles without marking? The objects of this law will be best advanced by holding, as we have in the cases hereinbefore referred to, that where the collector has required the packages only to be marked, and has permitted the articles of importation to go into the commerce of the country without marking, that the presumption thereby arises that he found the goods not capable of marking without injury, and that such presumption is not overcome simply by his afterwards assessing an additional duty upon them.

The judgment of the court below is *affirmed*.

### DISSENTING OPINION

BLAND, Judge: Crude sponges imported in bales were reported by the appraiser to the collector as not being marked in accordance with the provisions of section 304 (a) of the Tariff Act of 1922. The collector required the importer to mark the bales before delivery of the goods, but did not require any marking, stamping, branding, or labeling of the sponges. The collector imposed a 10 per cent extra duty on the appraised value of the goods, which action the importer protested. The United States Customs Court reluctantly sustained the protest, ordered a reliquidation, and a refunding of the extra duty, which action was taken, evidently, on account of the authority of the decision of this court in *Burstein & Sussman* v. *United States*, 14 Ct. Cust. Appls. 255, T. D. 41877.

There was no testimony or evidence introduced before the board. The importer contended there, as he contends here, that, under the *Burstein & Sussman* case, *supra*, the fact that the collector required only the marking of the bales and not the sponges before releasing the custody of the merchandise raised the presumption that the goods were either properly marked, branded, stamped, or labeled, or that they could not be so marked, branded, stamped, or labeled in accord-

ance with the provisions of the statute, and that the levying of the 10 per centum additional duty, under such circumstances, was not in accordance with the law.

In the *Burstein & Sussman* case, *supra*, the court had before it an appeal by importers of sanitary napkins, who had unsuccessfully protested the levying of the 10 per centum additional duty on account of the failure to mark the individual napkins, or properly mark the pasteboard packages containing the napkins. The collector, in that case, did not require the importers to mark the napkins, but released the goods when they had re-marked the pasteboard container.

The opinion of this court in the *Burstein & Sussman* case reversed the action of the Board of United States General Appraisers (now United States Customs Court), and gave approval to the position taken by the importer in the following language:

> The collector did not require the importer to mark or label the napkins, and he delivered the goods to the importer without such marking. We must, therefore, presume that they were not capable of being marked, stamped, branded, or labeled without injury. To hold otherwise would mean that the collector failed to perform the duty imposed upon him by law. The marking ordered by the collector was an official determination by him that the napkins themselves could not be marked without injury and as the presumption of correctness attaching to that decision had not been overcome, it must be held that the napkins themselves were not capable of being marked, stamped, branded, or labeled, as prescribed by section 304 (a).

The Government, in this court, maintains that, regardless of the pertinency of the *Burstein & Sussman* case, the facts in the instant case bring it squarely within the case of *Atterbury Bros.* v. *United States*, 14 Ct. Cust. Appls. 416, T. D. 42056, and urges that, had the *Atterbury* case been decided by this court at the time of consideration of the instant case by the court below, its judgment would have been otherwise.

Some aspects of the *Atterbury* case, at least in effect, seem to be in direct conflict with the *Burstein & Sussman* case, in so far as the court there used the following language:

> It is somewhat argued that, because the collector delivered the rolls of paper without compelling them, while in customs custody, to be marked as provided in the statute, some presumption arises that he found they were not capable thereof, *but we think that any such presumption arising therefrom was rebutted by the fact that he actually assessed the duty provided in the section.* In addition to this the importer has, as he was required, undertaken to show that the merchandise was incapable of receiving the statutory marking. (Italics not quoted.)

In the *Atterbury* case rolls of newsprint paper, packed in slatted wooden cases, were released from customs custody by the collector after he had required the cases only to be marked "Made in Norway." That the article was the roll of paper was not disputed. A 10 per centum duty was added by the collector, which action was pro-

tested by the importers and which protest was overruled by the trial court. This court affirmed the action of the court below.

Having in mind the several cases decided by us involving protests against the assessment of additional duties for failure to properly mark imported merchandise, it is apparent to us that most of the litigation has arisen on account of the failure of the collector to require the *article* to be marked before release, or on account of his erroneous determination as to what constituted the article and what constituted the container or package. Some of the confusion arose from the contention that the statute should be interpreted to require the marking of the *commercial unit* as the article. This question was settled in the *Martorelli* and *Hobe Button Co.* cases. The marking section of the statute requires that both the container and the package shall be marked, but only authorizes the imposition of a 10 per centum additional duty in the event the article, as distinguished from the container, is not marked.

In the case of *United States* v. *Martorelli*, 12 Ct. Cust. Appls. 327, T. D. 40483, figs were packed in baskets and the small baskets were packed in the larger baskets. The collector assessed a 10 per centum additional duty, evidently believing that the basket of figs was the article. This court held that the figs constituted the article of importation. There was no testimony as to whether the figs could or could not be marked. The court there said:

> The question whether the figs of this importation were capable of being marked, stamped, branded, or labeled, without injury, within the meaning of section 304 (a), does not properly arise on this record, and we desire to express no opinion in that respect. The collector released the figs without marking. Assuming that the collector performed his legal duty, it appears he found the figs not capable of being marked, stamped, branded, or labeled without injury; otherwise he could not have released them without marking. There was no testimony of any kind offered before the Board of General Appraisers as to whether or not these figs were capable of being marked as specified by section 304 (a). No contention is made here on that point, it being apparently assumed that the figs in question are incapable of being marked according to the statute.
>
> The question in each case as to whether an imported article is capable of being marked as provided by section 304 (a), without injury, is a question of fact, to be determined either by the collector in the performance of his legal duties, or by the Board of General Appraisers on evidence properly taken. *American Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18, T. D. 36259; *United States* v. *Lee Co.*, 9 Ct. Cust. Appls. 111, 112, T. D. 37977; *United States* v. *Squibb*, 2 Ct. Cust. Appls. 353, 355, T. D. 32081; *Vitelli & Son* v. *United States*, 7 Ct. Cust. Appls. 243, 275, T. D. 36544.
>
> In many cases the determination of such matters would require the testimony of experts in chemistry, mechanics, and other sciences. They are not such questions as this court will ordinarily take judicial notice of.

The case of *Di Martino* v. *United States*, 14 Ct. Cust. Appls. 57, T. D. 41554, followed the decision in the *Martorelli* case.

In the case of *Hobe Button Co.* v. *United States*, 12 Ct. Cust. Appls. 341, T. D. 40488, this court reversed the trial court and held that the article imported was the button and not the card upon which the button was sewed. The position of the collector and the trial court was that the commercial unit was the card of buttons, and that the importer's failure to mark them warranted the imposition of the additional duty. Without regard as to whether the buttons could or could not be marked, this court reversed the trial court upon its finding as to what was the article and, at page 346, said:

\* \* \* We believe that whether the article is markable is a question of fact to be decided upon the evidence and pertinent circumstances in each individual case; \* \* \*

In *Artistic Weaving Co.* v. *Maguire et al.*, 13 Ct. Cust. Appls. 140, T. D. 40964, the collector, under the instruction of the Treasury Department, held that the individual coat labels were not required by law to be marked, and that the marking of the roll of labels containing from 500 to 1,000 labels was sufficient. Appellant, an American manufacturer, protested the action of the collector in failing to require that each label be marked. This court held that the individual labels were the articles imported and that they should have been marked.

In *Yohalem & Diamand* v. *United States*, 14 Ct. Cust. Appls. 92, T. D. 41586, the court held that the collector erroneously imposed the 10 per centum duty for failure to mark a can of mixed vegetables, it being held by this court that the vegetables themselves were the articles imported, and that they were incapable of being marked in accordance with the provisions of the statute. The case of *Hudson Forwarding Shipping Co. (Inc.) United States*, 14 Ct. Cust. Appls. 94, T. D. 41587, involving a can of olive oil, was substantially to the same effect.

The case of *Gray & Co. (Inc.)* v. *United States*, 15 Cust. Appls. 122, T. D. 42192 involved the marking of cheeses which were imported two in a box, of which importation the box only was marked to indicate the country of origin. The collector required that the paraffin-coated cloth covering of each cheese be marked and assessed additional duty. The court held that the cheese itself was the article of importation; that the cloth covering was the container, and that the collector's failure to require the cheese to be marked raised the presumption that the cheese was incapable of being marked, stamped, branded, or labeled without injury, and the cases of *Martorelli, supra*, and *Burstein & Sussman, supra*, were cited as authority.

It may be noted here that at the time this case was decided by this court (May 7, 1927) the *Atterbury* case, *supra*, had been decided by this court on March 9, 1927, and that the *Atterbury* case was not cited or referred to.

With these various decisions in mind I approach the questions: First. Does the failure of the collector to require the marking of the article carry with it the presumption that the article is already properly marked or is incapable of being marked? Second. Does the collector's imposition of the 10 per centum additional duty carry with it a presumption that the imported article is not properly marked and is susceptible of marking in accordance with the statute without injury? Third. If both presumptions lie, and if there is no evidence in the record, how shall the issue be determined?

In the *Bustein & Sussman* case, the *Martorelli* case, and the *Gray & Co.* case this court answered the first question in the affirmative, and in the *Atterbury* case it answered the second question in the affirmative and stated that one presumption rebutted the other. Now, in the instance case, some one in authority, no doubt the collector, permitted the release of the goods after the bales only had been marked in customs custody. Since no evidence was introduced, if the second presumption rebuts the first, the importer at the trial in the court below found himself confronted with a duty, presumably legally assessed, by the collector, which he had protested and which, if his protest was to be supported, he must show was erroneous and illegally exacted. This he could do by showing the article was not the individual sponge but was the bale of sponges, and that the bales were properly marked in accordance with law, or that the sponges were the articles, and that they were properly marked or incapable of being marked.

In some of the cases which we have considered I think the collector could hardly have misunderstood what was the article and what was the container, and yet he did not require the article to be marked before releasing and only required the container to be so marked, and also assessed the additional 10 per centum duty. In that kind of case I would rather believe that the releasing of the goods without proper marking was the neglect of some one than to attribute to the collector such a palpable error in determining what the article was and to also, at the same time, attribute to him the levying of a duty which under the circumstances he should know was not warranted in law.

The facts in the case of *Sheldon & Co.* v. *United States*, 14 Ct. Cust. Appls. 419, T. D. 42057, illustrate the thought. There a paper-lined box, containing 12 chickens, was imported without any legal marking on either the box or chickens. Could there be any doubt in the mind of the collector that the imported article was the chicken? And yet he assessed the additional duty for failure to mark the chickens and only required the box to be marked before permitting the release of the goods. In this kind of case it would not be fair or proper to apply the rule of the Burstein case and say

that his failure to require the marking of the chickens was presumptive that he found that they could not be marked, because it would permit a legal presumption to control as against facts which conclusively and overwhelmingly rebut the presumption. Now, in cases like *Yohalem & Diamand, supra*, (canned vegetables), *Hudson Forwarding & Shipping Co. supra* (can of olives), *Gray & Co., supra*, (cheeses), and *Hobe Button Co., supra* (cards of buttons), I can easily understand how the collector might be confused as to what was the article and what was the container. In these cases the court held the vegetables and olives and cheeses and buttons to be the articles. Since they were not capable of being marked, the 10 per centum penalty did not apply. In many instances it has occurred to this court that the collector has frequently overlooked the proposition that the very wording of the statute indicates that certain importations are necessarily incapable of being marked, and this court said in *Hobe Button Co., supra:*

> The position of the Government in this and the Bradford case indicates that they desire a construction which, if carried to its logical conclusion, would result in a holding that articles which can not be marked will not be regarded as the article covered by the additional duty provision of section 304 (a), but that if the article can be marked then it should be held to be the article of importation therein referred to. Obviously the paragraph does not say this, nor can it be made to say it by any reasonable construction.

In cases where the article is not marked and there is no evidence as to its susceptibility of such marking, as in the instant case, the presumptions that may be drawn from the action of the collector in the two official acts brought to the court's attention in this case should not be permitted to control as against the sample of the importation and other facts which rebut the presumptions or have greater weight than the presumptions carry. Each case must be determined upon its merits, and, as this court said in *United States* v. *Martorelli, supra:*

> The question in each case as to whether an imported article is capable of being marked as provided by section 304 (a), without injury, is a question of fact, to be determined either by the collector, in the performance of his legal duties, or by the Board of General Appraisers, on evidence properly taken. * * *

If it is obvious that the collector did not misunderstand which was the article and he assessed 10 per centum additional duty, and if it is also obvious that the article was susceptible of being marked, the presumption arising from his releasing from customs custody without marking is not sufficient to warrant us in holding that he found the articles not susceptible of being marked.

In this case the court below held:

> We have several times held that sponges were capable of being marked.

I see no reason why the sponges could not be marked. It certainly would not produce injury to tag each individual sponge. It is clear to me, and I believe it was clear to the collector, that the individual sponges were the articles of importation. The fact that he, or someone under him, permitted the release of the goods without requiring each sponge to be marked should not inure to the importer's advantage. He, unquestionably, by his conduct, brought himself within the penalty provision of the law. He ought not to successfully complain, because the collector treated him more favorably than the law contemplated.

In *United States* v. *Gandolfi & Co.*, 12 Ct. Cust. Appls. 455, T. D. 40615, Judge Hatfield, for the court, said:

If the official action of the collector is admittedly not an expression of his judgment of the law and the facts, and if he asserts in his official report that such official action is incorrect as to both the law and the facts, and that the claims made in the protest are entirely valid, can it properly be said that such official action is attended by a presumption of correctness? We think not.

We are of the opinion that where a collector makes an official report, such as appears in this case, within the period of time provided for review by him of an advisory classification, and asserts that his official action is wrong, and that the claim made in the protest is entirely valid, and further states that the merchandise is properly dutiable under a paragraph of the tariff act which provides for merchandise such as is described in the invoice, there is no presumption of correctness attending his official decision, and the statement in such report as to proper classification of the merchandise, being entirely consistent with the description of the merchandise, contained in the invoice, which was a part of the record in the case, is sufficient to sustain the judgment of the Board of General Appraisers sustaining the protest. *Wheeler, Elder & Elder* v. *United States*, 11 Ct. Cust. Appls. 110, T. D. 38752.

There are many considerations which bring me to the conclusion reached, and a careful scrutiny of the marking section of the statute confronts one with the anomalous and strange results of a construction of the statute to the effect that the release of the goods by the collector or other customs officials carries with it a presumption that the goods could not be marked in accordance with the statute, which is controlling in the absence of evidence.

While probably unduly extending this dissent, I desire to set out in full section 304 (a) of the Tariff Act of 1922:

Sec. 304. (a) That every article imported into the United States which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled, shall be marked, stamped, branded, or labeled, in accordance

with such rules and regulations as the Secretary of the Treasury may prescribe. Unless the article is exported under customs supervision, there shall be levied, collected, and paid upon every such article which at the time of importation is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value thereof, or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

Every package containing any imported article, or articles, shall be marked, stamped, branded, or labeled, in legible English words, so as to indicate clearly the country of origin. Any such package held in customs custody shall not be delivered unless so marked, stamped, branded, or labeled, and until every package of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled shall be marked, stamped, branded, or labeled in accordance with such rules and regulations as the Secretary of the Treasury may prescribe.

The Secretary of the Treasury shall prescribe the necessary rules and regulations to carry out the foregoing provisions.

The section provides, first, that every article imported shall be marked; second, that every article held in customs custody shall be marked before delivery; third, that the goods held shall not be released until those which have been delivered shall have been marked.

The statute clearly contemplates that certain goods are not "held," but are released by the collector. Probably nine-tenths of a given unmarked shipment are delivered without marking. Can it be said that the act of delivering these goods carries with it the presumption that they were incapable of being marked, to the extent that the act of levying a 10 per centum penalty at the time of liquidation by the collector is overcome and brushed aside?

It should be noted that there is no provision in the section which provides that *no merchandise* shall be delivered until it is marked, but, on the contrary, the provision clearly implies that the major portion of the goods may be released before they are marked. Evidently Congress realized that it is frequently impossible for the collector to determine the markability of the goods before they are released. It would seem to me to be a strange and dangerous doctrine to hold that the collector, when he comes to liquidate, shall be prevented from doing such things as the law requires merely because he has theretofore presumptively done something to the contrary.

In the absence of any showing of error, the official act of the collector in levying the additional duty upon liquidation should stand unchallenged, and the action of the court below sustaining the protest and ordering a refund of the duty should be reversed. The question pressed in this case was not presented in the other cases cited herein, and, in fairness to the trial court, which reluctantly sustained the protest because of our decision in the *Burstein & Sussman* case, *supra*, it should be said that the *Atterbury case* had not been decided when it ruled on the instant case.

The judgment of the United States Customs Court should be *reversed* and *remanded*.

For the reasons above, I dissent from the decision of the court.

DISSENTING OPINION

BARBER, Judge: While I concur in much that is said in the dissenting opinion of Judge Bland, there are certain facts in the case, and certain views of the applicable law, which I deem it my duty to present in this manner.

No testimony was offered at the trial below. The printed record shows that the entry was under bond and the date of its liquidation. From the files in the case it appears that the importation, consisting of 44 bales of sponges, was entered for warehouse at the port of New York November 8 or 10, 1923; that six of said bales were sent to the appraiser's stores for examination and there found and reported by the appraiser to the collector not legally marked; that on the 16th day of November following the collector issued to importer a notice in writing, the material part of which I quote:

Referring to your importation of sponges per S. S. *Munamar* arrived 11/10/23, entry No. 13893, 13881, you are informed that the appraiser has returned the invoice with the statement that bales Star 2873, 2639, 4015, 3905, 2543, 3616, and bales 3579, 21, 2928 are not legally marked as prescribed by the existing tariff act.

You are, therefore, instructed not to dispose of any of the bales heretofore delivered to you under the provisions of your penal bond given at time of entry until such bales have been marked and released according to law.

When you have finished marking the goods in your possession you will execute the affidavit on the reverse side hereof and present this notice to the foreman, ninth floor, appraiser's warehouse, 641 Washington Street, who will supervise the marking of the goods held in public store, and certify to the fact. You should then immediately return this notice, properly signed and verified, to the law division, room 304, customshouse, where, if the marking meets the requirements of law, a delivery permit will be issued. Mdse. will be transferred to 9th floor for marking at 9, 11, or 1.30 o'clock on the day this notice is presented.

Importer's representative on November 22d made affidavit on the back side of such written notice that he had marked, or caused to be marked, the merchandise in the importation referred to in the notice "now in his possession," by stenciling thereon the word "Nassau." This affidavit is followed by a notation purporting to be signed by a United States storekeeper dated "11/26/23" that "All legally marked except bales 22, 3730 delivered previous of notification on W H B 13893." This is followed by a certificate purporting to have been made by a foreman addressed "Collector, Law Division, Customs House," reading as follows:

This is to certify that the goods detained at public store have been legally marked, and that the person who did the marking states that the goods mentioned in the above affidavit were marked in the same manner.

and finally, by the notation, "Marking complete November 22, 1923." There is no delivery permit among the files, and no consumption entry. The warehouse entry was liquidated May 12, 1924. The Customs Court did not expressly find that the importation had been delivered to importer.

A delivery permit must be issued before it is lawful to deliver imported merchandise. Such permit must be signed by the collector and a comptroller of customs, if there is one at the port of entry. Sec. 523, Tariff Act of 1922; Customs Regulations of 1923, arts. 132 and 1185; *United States* v. *Cronkhite*, 9 Ct. Cust. Appls. 129, T. D. 37980.

I agree with the United States Customs Court in its finding that marking the bales with the word "Nassau" is not a compliance with the law, because that word does not indicate any country. There is nothing to show that the collector or any other customs officer directed that the merchandise be so marked, or that the collector accepted such marking as a compliance with the law.

From all the foregoing, I think it can not be held or assumed that when this case arose all the sponges had been delivered to importer. It should rather be concluded that they were still wholly or partly in either the public stores or bonded warehouse, or both.

In addition to this, I think the real fact is, as suggested in the opinion of the Customs Court, that the collector made a mistake and thought the bales were the articles imported, and on that theory assessed the 10 per centum duty required by paragraph 304 (a). This was clearly error, as pointed out in the majority opinion, and if the judgment below were affirmed on this theory alone, I would concur.

I can not agree with the conclusion of the court, as stated in the last part of the opinion, that—

the objects of this law will be best advanced by holding, as we have in the cases hereinbefore referred to, that where the collector has permitted the goods to go into the commerce of the country without marking, that the presumption arises that he found the goods not capable of marking without injury, and that such presumption is not overcome simply by his afterwards assessing an additional duty upon them.

In my opinion no presumption arises, from the mere fact that the collector has delivered imported goods to the importer without causing them to be marked, that he has found them not capable of such marking within paragraph 304 (a); at least, that no presumption arises therefrom which affects, controls, limits, or rebuts the presumed correctness of his liquidation and assessment of the duty of 10 per centum ad valorem on the importation.

It is unnecessary for me to enter into any extended consideration of all the cases decided in this court cited in the main opinion as supporting the above-quoted conclusion. One is sufficient. It is said that the case of *United States* v. *Martorelli*, 12 Ct. Cust. Appls. 327,

T. D. 40483, is clearly in point. With that statement I disagree. In order to demonstrate the reason for my disagreement I insert a more complete quotation from the opinion in that case. We said:

The question whether the figs of this importation were capable of being marked, stamped, branded, or labeled, without injury, within the meaning of section 304 (a), does not properly arise on this record, and we desire to express no opinion in that respect. The collector released the figs without marking. Assuming that the collector performed his legal duty, it appears he found the figs not capable of being marked, stamped, branded, or labeled, without injury; otherwise he could not have released them without marking. There was no testimony of any kind offered before the Board of General Appraisers as to whether or not these figs were capable of being marked as specified by section 304 (a). No contention is made here on that point, it being apparently assumed that the figs in question are incapable of being marked, according to the statute.

How this can be understood to be a *decision* as to the legal effect, if any, of the collector's action in releasing goods before liquidation without requiring them to be marked, I am unable to understand, in view of the explicit and reiterated statement therein that the question as to whether the goods were capable of being marked was not in issue. Further than this, I have always understood, and now do, that the real question decided in that case was that the failure to mark a *package* did not justify the assessment of a duty under paragraph 304 (a). To reach that conclusion it was not necessary to consider whether the individual articles were or were not capable of being marked, or the effect, if any, of their release unmarked to the importer. I agree that our views, as expressed in our opinions in *Burstein & Sussman* v. *United States*, and *Atterbury Bros.* against same, cited in the main opinion as to the effect of the release of imported merchandise to an importer without requiring the same to be marked, are somewhat inconsistent. While this case does not, I think, require the settlement of that issue, nevertheless, if to be settled there are certain matters relating thereto which, so far as I know, have never been considered by this court, and the purpose of this dissent is to present the same, because, regardless of what we may have said in the past, it is now our duty, if we consider the matter at all, to come to a correct conclusion. This will, I think, be aided by a brief examination of previous so-called marking statutes.

Section 6 of the Tariff Act of 1890 provided that articles usually or ordinarily marked, and all packages containing such or other imported articles, unless marked in legible English words, "shall not be admitted to entry."

Section 5 of the Tariff Act of 1894 in substance contained most of these provisions, but instead of prohibiting *entry* of articles and packages not marked as required by the section, it provided that they should not be *delivered* to importer until they had been marked, etc. It also required both articles and packages to be marked so as to indicate the contents thereof before delivery could be made.

Section 8 of the Tariff Act of 1897 contained practically identical provisions.

Section 7 of the Tariff Act of 1909 enlarged the preceding enactment, but retained the provision that the merchandise should not be delivered to importer until marked as required by law. In addition, it expressly provided that the Secretary of the Treasury should prescribe the necessary rules and regulations to carry out the provisions of the section.

The Tariff Act of 1913, section 4, subdivision F, is like its immediate predecessor.

It will be noticed that section 304 (a) of the Tariff Act of 1922 which is set out in full in the main opinion, shows numerous changes. The provision for correct marking as to quantity, number or measurement is omitted; a 10 per centum duty is assessed upon the appraised value of each *article* not marked unless exported under customs supervision; the packages are still required to be marked, but no duty is imposed for failure so to do. There is no prohibition of delivery of any particle to the importer before they are marked, if capable thereof, except as contained in the following part thereof:

Any such article *held in customs custody* shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation *which shall have been released from customs custody* not so marked, stamped, branded, or labeled, shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe. (Italics mine.)

It is quite obvious from this language that Congress understood and intended that articles capable of being marked within the statute might be released to the importer before they were marked, and that only those which were "held in customs custody" should not be delivered until marked. "Held in customs custody" to my mind clearly means those articles or packages sent to the appraiser's stores for examination and appraisement, and merchandise otherwise in the actual custody of customs officers.

Assuming the issue supposed to be presented is actually involved in this case, we have this precise state of facts. The collector has liquidated the entry and assessed the 10 per centum ad valorem duty upon the merchandise. His liquidation is, under the general rules applicable to all liquidations, presumed to be correct until the contrary is shown, and the burden of establishing its incorrectness devolves upon importer. In the case at bar what has importer shown that tends to impeach the collector's classification? As I view it, nothing. The majority opinion proceeds upon the theory that it is impeached by the mere fact that the sponges were delivered to the importer by the collector before liquidation without requiring them to be marked. As already pointed out, there is no proof of such delivery, but if it be assumed, and it also be assumed that such

delivery took place before liquidation, how can that alone impeach the liquidation? What distinction can be made between delivery before liquidation of merchandise which ought to have been marked, but was not, and delivery of any other merchandise? The statutory provision is that articles *held in customs custody* shall not be delivered until marked, if capable thereof. There is no law or Treasury regulation which requires a collector to examine the merchandise to determine its capability of being marked and decide that question until liquidation. In this case what is there to show that the collector has directed the importer to mark the merchandise as it did mark it, or has accepted such marking as a compliance with the law?

Section 316 (a) must be construed in view of the provisions of sections 486, 504, 515, and 521 of the act, and perhaps others. Without analyzing them in detail, it will be noticed that section 486 implies that upon the entry of *any* merchandise, none or part of which only is sent to the public stores, the consignees upon giving a bond, as in the section prescribed, may obtain immediate possession of all thereof which is not sent to the public stores.

Section 499 provides that no imported merchandise, required by law or regulations to be inspected, examined, or appraised, shall be delivered from customs custody until it has been examined, etc., except as otherwise provided, and points out what part thereof shall be sent to the public stores or other place for examination and appraisal.

Section 504 provides that the estimated duties shall be paid or deposited at the time of making entry, unless the merchandise is entered for warehouse or transportation under bond, and that later the collector shall ascertain, fix, and liquidate the amount of duties, give notice thereof and collect any increased duties over such as were estimated, as well as refund any excess thereof. The duty provided in section 304 (a) would be obviously a part of the estimated duties. I am unable to see why these provisions are not all applicable to articles required to be marked, and the assessment of the duty for the failure to mark them as required by law. To hold otherwise involves the anomalous result that a presumption arises against the liquidation from the prior delivery of goods without requiring them to be marked, which does not arise in any other kind of case.

Section 515 provides that within 60 days after the filing of a protest the collector shall review his decision and may modify or change the same. Section 521 provides that under certain conditions the collector may reliquidate within one year. Consult *Robertson* v. *Downing*, 127 U. S. 607; *United States* v. *Godchaux Sugars (Inc.)*, 11 Ct. Cust. Appls. 529, T. D. 39678.

If the theory of the main opinion be sound, a reliquidation by the collector, so far as it related to the assessment of the 10 per centum ad

valorem duty under section 304 (a), would seem to be without effect if, prior thereto, a part or all of an importation had been delivered to the importer without requiring it to be marked, or, if not so, *to impose upon the Government the burden*, at the trial of a protested liquidation, of establishing by proof the correctness thereof.

It is quite clear that one of the important questions to be determined as to many, perhaps most, importations is whether or not the articles and packages, if any, are marked as required by section 304 (a). If that question must be determined before any merchandise is passed over to the importer the business of the customs-houses can not be carried on in an orderly manner. If mere delivery of an article without requiring it to be marked raises a presumption that it is not capable of being marked sufficient to overcome the presumed correctness of a later assessment of the duty imposed by law for not marking, the Government may lose much revenue, and the purpose of the statute be largely defeated.

Suppose, that out of an importation of 100 packages containing duplicate articles all lawfully required to be marked, 10 packages were sent to the appraiser's stores and 90 delivered to importer without being marked or appraised. Later, at liquidation, and after appraisement, the collector lawfully required the contents of the 10 packages to be marked and assessed the 10 per centum duty on them. Is not he entitled also to assess a like duty on the 90 packages and demand their return for marking the articles therein, and, if return is impossible, proceed on the bond? Can it be held that because the 90 packages were so delivered the Government has lost its 10 per centum ad valorem duty thereon, or that by the prior delivery of the 90 packages unmarked the collector at liquidation is powerless to assess and collect the marking duty on those still in customs custody? Of course it can not be supposed that different rates of duty can lawfully be imposed on identical articles of the same importation and entry. Section 503 of the act requires ad valorem duties to be assessed on the final appraised value. The collector must know that before he can liquidate.

If the law on this question be as stated in the majority opinion, customs officials should deliver no merchandise to the importer until it has been carefully examined to ascertain whether or not it is capable of being marked under the provisions of the section, and if found capable, require it to be marked and appraised before delivery. The result of this procedure inevitably will be congestion and delay at every port of entry through which passes any considerable amount of imported merchandise, because such examination may involve questions as to the method of manufacture, production, and use, that may require much time.

I think Congress has clearly indicated a different course of procedure.

As already appears, the marking statute first provided that merchandise required to be marked should not be admitted to entry unless marked. Act of 1890, *supra*. While that act was in force the regulations of the Treasury Department so provided. Customs Regulations of 1892, art. 311. With the change of the statute providing that markable merchandise should not be delivered to the importer until lawfully marked (Act of 1897, *supra*) came a corresponding change in the regulations of the Treasury Department. See Customs Regulations of 1899, arts. 452 and 453. The latter provided that the *appraising officer* should make an examination of all merchandise in his hands for appraisement in order to ascertain whether the same was marked as required by law; that "whenever he shall discover a failure to comply with said requirements, he shall call for the remaining packages on the invoice, and the importer shall be directed to mark the merchandise in accordance with law." In default of such action by importer the goods were to be sent under general order and treated as unclaimed. See also T. D. 20178, dated October 13, 1898. Similar provisions were embodied in the Customs Regulations of 1908, articles 312 and 313. In this connection see T. D. 29970, T. D. 30029, and T. D. 30041. These regulations were brought forward into articles 450 and 451 of the Customs Regulations of 1915. In article 450 it was provided that any article "found upon examination" not to be properly marked should not be delivered until marked at the importer's expense. Article 451 provided that the *appraiser* should report to the collector all articles and packages found by him not properly marked, and that the collector should thereupon notify the importer to redeliver the unexamined packages or to arrange to mark the same and their contents under customs supervision.

After the customs regulations of 1915 had been promulgated, the Secretary of the Treasury (T. D. 37066, dated March 21, 1917) submitted to collectors at various ports a question as to the better procedure in event merchandise was not, when imported, marked to indicate the country of origin. At some ports the practice was "for the examiner to notify the deputy collector at the appraiser's stores of this fact and to hold in abeyance the appraisement and release of the merchandise." At others the custom was "for the appraiser at the time of making his appraisement to note on the invoice that the merchandise is not legally marked, and to return the invoice bearing his appraisement and notation in regard to the marking to the collector."

It appearing to the Treasury that the latter practice was in force at the majority of ports, and that a change in procedure "would

delay the appraisement of the merchandise, and in some instances result in a congestion of examination packages in appraiser's stores" the department directed the adoption of the latter method. Pursuant thereto the result was that the report of the appraiser to the collector, which accompanied his appraisement, was the first notice or knowledge which the collector received as to whether or not the merchandise was marked as required by law. There never has been, so far as I am able to ascertain, any requirement that the *collector* should make an examination of the merchandise to determine whether or not it was marked until after its condition in that respect was called to his attention by some other customs officer.

This regulation of 1917 was in force when the Tariff Act of 1922 was enacted, and it is presumed to have been within the cognizance of Congress. It is embodied in articles 471 and 472 of the Customs Regulations of 1923.

It is quite evident that every regulation promulgated after the Tariff Act of 1894 by the Secretary of the Treasury, to whom was especially committed (by the Act of 1909) the enforcement of the marking paragraph, contemplated that articles and packages which were by law required to be marked, but were not marked at the time of importation, might be delivered to the importer before they were marked provided, of course, a bond were given to protect the Government. It may be that this was a departure from the strict letter of the law, but, however this may be, it was within the cognizance of Congress when the Tariff Act of 1922 was passed, and, I think, is the basis and the reason for the change in section 304 (a), heretofore pointed out. In other words, Congress recognized that ex necessitate the regulations of the Treasury Department permitting markable merchandise to be delivered to the importer before the question as to whether or not it must be marked should be decided, was the only practicable way to handle such importations. Therefore, it changed the law to accommodate the conditions, and thereby recognized the necessity and justice of the Treasury regulations touching that matter.

In this connection I call attention to *Robertson* v. *Downing, supra,* where, at page 613, it is said:

The regulation of a department of the Government is not of course to control the construction of an act of Congress when its meaning is plain. But when there has been a long acquiescence in a regulation, and by it rights of parties for many years have been determined and adjusted, it is not to be disregarded without the most cogent and persuasive reasons.

As I view it, the majority opinion utterly disregards the provisions in section 304 (a) that *articles held in customs custody* shall not be delivered until marked, stamped, branded, or labeled as required by law, and *until every such article of the importation which shall have been released* without such marking, etc., shall be marked, etc., as the law

requires. Under the holding of the opinion that a presumption arises from any release of the articles without requiring them to be marked that they are not capable thereof, results that those that have been released before liquidation, without being required to be marked, may not thereafter be required to be marked—a result which the Congress never intended.

If this case may be disposed of on the ground I have first herein discussed, I would concur in a judgment sustaining the court below. If disposed of on the second ground herein considered, I would *reverse* the judgment below.