UNITED STATES *v.* FREDERICK PUSTET CO., INC. (No. 3213)[1]

United States Court of Customs and Patent Appeals, October 28, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Reuben Wilson*, specia attorney, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 10, 1929, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

Frederick Pustet Co. (Inc.), the appellee in this case, in 1926 made an importation of "14 Stations, Way of the Cross." The importa-

---

[1] T. D. 43667.

tion was made for certain individuals who were presenting this work of art to St. Pius Church of Cincinnati, Ohio. Consumption entry was filed at the port of Cincinnati, August 25, 1926, and upon its face recited that the material was "imported expressly for presentation to St. Pius Church, an institution established solely for religious purposes, not for sale."

The work consists, as we understand, of 14 "Stations," made up of small pieces of genuine Venetian mosaics so cemented or fastened together as to make a complete mosaic picture. Each picture is contained in a metal frame and is 35 inches high by 25 inches wide, oblong in shape with square top. The total thickness of the station when completed in its frame is approximately 1½ or 1¾ inches. These frames are placed at regular intervals between bays and windows, being set into the walls of the church, seven on each side, and are religious illustrations comprising what is known as the "Way of the Cross," being intended to show the 14 stations, beginning with the condemnation of Christ by Pilate and continuing to His being laid away in the sepulcher.

Under the Tariff Act of 1922 the importation was returned by the collector free of duty, but was held by him to be subject to a 10 per centum ad valorem assessment because "not legally marked under section 304 (a)" of said act.

Protest was filed and notice given in the manner prescribed by law, and the matter was heard and finally decided by the third division of the United States Customs Court, February 26, 1929, that court sustaining the protest. Judgment was entered accordingly directing reliquidation with annulment of the 10 per centum levy. From that judgment appeal was taken by the Government to this court.

That portion of section 304 (a), Tariff Act of 1922, which appears to be applicable to the case, reads as follows:

That every article imported into the United States, which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled, shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe. Unless the article is exported under customs supervision, there shall be levied, collected, and paid upon every such article which at the time of importation is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value thereof,

or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

It appears that the article or articles involved bore no mark, brand, stamp, or label when imported to indicate the country of origin, which was Italy.

When the importation reached Cincinnati the stations were delivered to the importer upon its bond, at its door, 436 Main Street, and then opened and inspected by the proper Government official, who, after once going away, later returned and said to the importer's agent that he had forgotten to note whether they were marked with the country of origin. Finding that they were not so marked, he authorized and directed that there be painted on the backs the words "Made in Italy," and this was done. The 10 per centum ad valorem assessment was thereafter levied.

No brief was filed in this court in behalf of appellee, but there was an oral argument.

It is insisted that the markings which were "authorized and directed" by the Government official were not so placed as to meet the requirements of the statute, in that they were put upon the backs of the stations which were to be set into the walls of the church and hence were not visible after the stations had been permanently so set. The language of the statute, *supra*, is that the markings shall be "in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements." The statute provides that "every article imported into the United States, which is capable of being marked, stamped, branded, or labeled, without injury at the time of its manufacture or production, shall be marked," (etc.).

The Customs Court held that "the action of the collector requiring the articles to be marked on the reverse side was an official determination by him that they were incapable of being marked, without injury, on their face or other conspicuous place that would not subsequently be obscured," and cited *Burstein & Sussman* v. *United States*, 16 Ct. Cust. Appls. 282, T. D. 42871; *United States* v. *American Sponge & Chamois Co.*, 16 Ct. Cust. Appls. 61, T. D. 42731; and *Burstein & Sussman* v. *United States*, 14 Ct. Cust. Appls. 255, T. D. 41877.

The line of reasoning in behalf of appellee seems to be, in substance, that a marking at the time of production or manufacture is required by law; such marking was not had; the collector directed them to be marked in a manner which it is claimed did not meet the requirements of the law and his act, as a matter of law, constitutes a determination by him that they could not be legally marked.

If the matter is to rest solely upon this question of law, we are at once confronted by what some have conceived to be a conflict between assertions in opinions of this court in former cases.

In the case of *Burstein & Sussman* v. *United States*, 14 Ct. Cust. Appls. 255, T. D. 41877, the merchandise involved consisted of sanitary napkins packed in boxes. The *boxes* were marked or stamped, but because of a certain color effect the collector held the marking insufficient and required restamping. The *napkins* themselves were not marked in any way and were released by the collector without their marking being required. The collector, however, assessed a 10 per centum duty on account of the *boxes* not being marked, against which the importer made protest. This court held that the *napkins* were the articles of importation, and since it is only upon the nonmarking of the *articles* of importation and not upon the nonmarking of the package which contains the articles that the statute provides for the additional 10 per centum levy, the protest of the importer was sustained, the court saying:

The collector did not require the importer to mark or label the napkins, and he delivered the goods to the importer without such marking. We must, therefore, presume that they were not capable of being marked, stamped, branded, or labeled without injury. To hold otherwise would mean that the collector failed to perform the duty imposed upon him by law. The marking ordered by the collector was an official determination by him that the napkins themselves could not be marked without injury and as the presumption of correctness attaching to that decision had not been overcome, it must be held that the napkins themselves were not capable of being marked, stamped, branded, or labeled, as prescribed by section 304 (a). *Bradford* v. *American Lithographic Co.*, 12 Ct. Cust. Appls. 318, 323; *United States* v. *Martorelli*, 12 Ct. Cust. Appls. 327, 331.

This principle was followed in a number of other cases in which the question involved was, What constituted the article of importation—the container or the merchandise in the container?

In *Atterbury Bros.* v. *United States*, 14 Ct. Cust. Appls. 416, T. D. 42056, decided subsequent to the *Burstein & Sussman* case, *supra*, although at the same term, the importation consisted of newsprint paper in rolls, each roll being contained in a slatted wooden case. Neither the cases nor the rolls of paper were marked in any manner to indicate the country of their origin, and the collector, as a condition of delivery or release, required the importers to mark, and they did mark, on each case, "Made in Norway." There was no dispute that the rolls of paper were the *articles* of import. The collector assessed a duty of 10 per centum on the appraised value of the importation under section 304 (a). The importers protested; the court below overruled the protest and this court affirmed its action, among other things saying:

It is somewhat argued that, because the collector delivered the rolls of paper without compelling them, while in customs custody, to be marked as provided in

the statute, some presumption arises that he found they were not capable thereof, but we think that any such presumption arising therefrom was rebutted by the fact that he actually assessed the duty provided in the section.

It has been argued that these opinions lay down inconsistent legal principles, in that in the first line of cases of which *Burstein & Sussman, supra*, is illustrative, it was said that the release by the collector without requiring marking constituted a legal finding of inability to mark, whereas in the *Atterbury Bros.* case, *supra*, it was said that the assessment of the additional duty by the collector overcame such a presumption.

It is proper that attention should be directed to the fact that this court has since had occasion to review the prior decisions referred to and in the case of *United States* v. *American Sponge & Chamois Co.*, 16 Ct. Cust. Appls. 65, T. D. 42731, did so, and said:

The case relied upon by the Government in the case at bar is *Atterbury Bros.* v. *United States*, 14 Ct. Cust. Appls. 416, T. D. 42056. It is claimed that the opinion in this case, announced after the decision in the *Martorelli, Di Martino*, and *Burstein & Sussman* cases, *supra*, and before the decision in *Gray & Co.* v. *United States, supra*, is in conflict therewith and announces a proper rule, namely, that where the collector has assessed the 10 per centum additional duty, that this must be taken as a finding by him that the articles of importation were in fact capable of being marked, that they were not so marked, and that, therefore, the additional duty attaches. The *Atterbury* case, *supra*, dealt with rolls of paper, in wooden cases. The collector caused the cases to be marked, assessed an additional duty of 10 per centum, and released the goods. Evidence was introduced before the Board of General Appraisers on the issue whether the goods were capable of being marked, and upon which the board held that the importer had not proved the rolls could not be marked. This court held that, the board having determined the matter upon the evidence and the court not being able to say that the finding of the board was contrary to the evidence or was not supported by the weight of the evidence, the judgment below must be affirmed. It is true that the court did say, in that case, that any presumption arising from the release of the goods without marking was overcome "by the fact that he actually assessed the duty provided in the section." This statement was not necessary to a decision of the matter then before us, and in so far as it may differ with the conclusion arrived at in the cases heretofore cited herein, it should not be taken as expressing the views of this court on the issues involved in that case or here.

A careful reading of the *Atterbury Bros.* case, *supra*, will, we think, disclose that its decision did not turn upon legal presumption, that none was necessary to its determination, and that it was an affirmation by the court of a decision of the Customs Court, then known as the Board of General Appraisers, upon a question of fact, this court holding that the burden was upon the importers to show that the importation could not be marked in accordance with the statute without injury and that they had failed to make the necessary proof.

In another case of *Burstein & Sussman* v. *United States*, 16 Ct. Cust. Appls. 282, T. D. 42871, this court had another occasion to

review the prior decisions to some extent and it was again done. In this latter case it was said:

In *United States* v. *American Sponge & Chamois Co.* case, this court again held that where the collector required *packages* containing imported articles—sponges—to be marked so as to indicate the country of origin, but did not require the sponges to be marked, stamped, branded, or labeled, it would be presumed that he found the sponges were incapable of being marked, stamped, branded, or labeled without injury at the time of their production.

And in accordance with that principle the action of the Customs Court in overruling a protest in a case similar in all respects to the prior *Burstein & Sussman* case, decided in 14 Ct. Cust. Appls. 255, T. D. 41877, *supra*, was reversed and the case remanded for a reliquidation and release of the additional 10 per centum duty which the collector had imposed.

We have referred at some length to the previous cases because some of them have been cited in the briefs of the Government, and in argument at the bar, and because of the apparent confusion existing at times relative to them.

In all these preceding cases the difficulties seem to have arisen from misunderstandings or disagreements as to what constituted the *article* of importation, as a result of which this court has been called upon, under the facts appearing in each case, to determine whether the item to which section 304 (a) should apply was the thing in the package or the package with the thing in it.

The state of the law now is that when the article of importation is contained in a package the package, as well as the article, must be marked, stamped, branded, or labeled, so as clearly to indicate the country of origin. This apparently must be done, in case of the package, in any event, since there is no "without injury" limitation or exception in the case of the "package," and it is not to be delivered unless it is so marked, etc. But there is no provision for assessing any duty or additional duty on account of the absence at the time of the importation of the marking so far as the *package alone* is concerned. Where, however, the actual article of importation is the unmarked merchandise contained in the package and the collector releases it unmarked, without assessing the duty or additional duty, the presumption is that it is of a nature which renders it incapable of marking, etc., and so, by the release, it falls within the "without injury" exception or limitation which Congress provided. As of course, any questions that may grow out of delivery, prior to classification and liquidation, or where the collector reliquidates an entry within the period of time allowed by law, etc., are questions that must be determined as they arise, under the facts of each case.

The facts in the previous cases which have been before this court do not coincide with the facts in the case at bar.

In the case at bar the package in which the article was contained is not a factor in the issue, nor is there any question of final release raised. It was delivered to the importer on its bond, and the release for delivery to the church where it was to be placed was evidently made dependent upon the marking which the collector directed and upon the payment of the amount assessed as a duty at 10 per centum of the appraised value.

Certain questions suggest themselves, therefore, as being necessary matters of discussion, if not of definite determination.

The primary and essential question is, Are the articles imported capable of being marked, stamped, branded, or labeled, as provided by the statute, without injury? It is to be observed that four words are used, "marked," "stamped," "branded," or "labeled."

If they are capable of any one of these treatments then there is no question of the legality of the duty assessment; if not, then it is equally the case that the assessment is illegal and there should be a reliquidation and the duty remitted.

The burden of showing that they are not so capable of being treated *rests upon the importer*, and, unless there be a controlling presumption of law, he must demonstrate the noncapability by satisfactory proof of fact.

The first subsidiary question is, Was the action of the collector requiring the articles to be marked in the manner they are shown to have been marked an official determination by him such as to constitute a controlling legal presumption that they were incapable of being treated in the way the statute provides, without injury?

To so hold would, we fear, open the way for applying a principle laid down under a given state of facts and intended to be restricted within the limits of those cases, to a much wider field and so go beyond the intent of Congress by which we are bound, and the facts in this case do not admit of our doing so. The articles in question were not released as were the articles in previous cases. The procedure here was different and those cases do not, we think, furnish precedents applicable to the case at bar. Furthermore, to so hold would in effect be a holding that the markings required by the collector were not legal markings, because the presumption which we are asked to indulge and give this legal effect to can only grow out of holding them illegal or insufficient. The record in the case is not in a condition which requires us to pass upon their sufficiency or legality, and we think it our duty to pretermit an expression upon that question.

Since we are unable to find that there is a legal presumption which settles the issue of their capability of being marked, stamped, branded, or labeled, in accordance with the provisions of the statute, the question must turn upon the proof as to the facts.

The court below passed upon this, saying:

> The Government introduced no testimony, and we do not consider the testimony of plaintiff's (appellee's) witness on this point sufficient of itself to establish that a proper marking on the face of the mosaics would have injured them.

We have examined the record in this case with great care. It is very brief and unsatisfactory. We have considered the articles themselves in connection with such testimony as was taken. In view of their nature and the purpose for which they are to be, or are being, used, it is with reluctance that we have been forced to the conclusion we have reached. It would have been more agreeable to the court if the application of the principles which we feel must govern here could have been called out by some other character of importation in some other case, but, of course, the court has no option except to follow the law as Congress has declared it.

We can readily understand that branding or stamping the face of the picture could be done in a way that would ruin it; we can go further, and, in all reason, infer that the picture might not, without injury, be subjected to stamping or branding or marking or labeling of various kinds, and we have no doubt but that it was a vision comprising these injurious kinds which was in the minds of those who gave their brief testimony; but we are not justified in inferring from what we may imagine of the article itself, taken in connection with the testimony, that *no* process of marking, branding, stamping, or labeling sufficient to meet the statutory requirement, in a reasonable way, could have been utilized. We have expressed ourselves as being unwilling to make a holding that the method adopted was illegal, because it is unnecessary to determine that matter. If it was legal, the assessment made was valid; if it was not legal, then there might have been other methods, and the burden rested upon the importer to show there were not.

We agree with the Customs Court upon its findings of fact but are unable to concur with it as to the applicability of the legal principle quoted in its opinion to the facts of this case. Accordingly, the judgment is *reversed*.

BLAND, J., concurs in the conclusion.